504 So.2d 93 (1987)
UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Appellant,
v.
WEST MONROE CHARTER SERVICE, INC., et al., Defendants-Appellees.
No. 18,416-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Writ Denied May 8, 1987.
*94 Davenport, Files & Kelly by William G. Kelly, Jr., Monroe, for plaintiff-appellant United States Fire Insurance Company.
Robert S. Cooper and Terry B. Loup, Baton Rouge, for defendants-appellees Billie *95 Nell Bowen, Deborah Denise Bowen, and Cheryl Ann Bowen Smith.
John T. Seale, Monroe, for defendants-appellees Bonnie W. Wells, Larry Wells, Donna Wells, Kenneth Wells and Connie Wells.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Chief Judge.
Appellant, United States Fire Insurance Company, filed this suit for declaratory judgment seeking a ruling that it provided no liability coverage under an aircraft insurance policy issued to appellee, West Monroe Charter Service, Inc., for the death of passengers killed in a crash of an airplane owned by the corporation. The trial court rendered judgment declaring that the policy provided liability coverage. For the reasons set forth herein, we reverse the judgment of the trial court.
On July 1, 1981, a 1977 Piper aircraft, piloted in a severe rain and thunderstorm by Albert B. "Jack" Little, crashed near Vicksburg, Mississippi. The aircraft was occupied by Mr. Little, John Caldwell Durham, Jimmy Dale Bowen, and Milner Wells. All of the occupants were killed in the crash.
The Bowen and Wells survivors filed wrongful death suits naming as defendants the Succession of Albert B. Little through the provisional administrator Henry Little, Mid-South Tank & Utilities Company, Inc., West Monroe Charter Service, Inc., and United States Fire Insurance Company. Both families settled their claims with all parties to the suit except U.S. Fire. At the time the instant suit was brought, no Durham survivors had filed suit against any of the parties involved herein.
By virtue of this suit for declaratory judgment, appellant sought a ruling that the pilot's lack of a current medical certificate and the rental aircraft status of the plane excluded liability coverage under the policy. Named as defendants to this suit were West Monroe Charter Service, Inc., Mid-South Tank & Utilities Company, Inc., the Succession of Albert B. Little through the provisional administrator Henry Little, the Bowen survivors, the Wells survivors, and Mrs. Durham. West Monroe Charter Service, Inc. is a Louisiana corporation whose corporate stock at the time of the accident was owned one-half by Albert B. Little and one-half by attorney Sam O. Henry, III, both residents of West Monroe, Louisiana. West Monroe Charter was the owner of the aircraft involved in the crash and the named insured on the insurance policy in question. Mid-South Tank & Utilities Company, Inc. is a Louisiana corporation whose stock at the time of the crash was owned entirely by Albert B. Little.
At trial on the merits, the court found that appellant failed to establish that the pilot had no current medical certificate or that the aircraft had been leased or rented to Mr. Little or Mid-South and rejected appellant's claim that coverage under the policy was excluded.
This appeal presents the following issues:
1. Did appellant establish that the pilot did not have a medical certificate?
2. If the pilot did not have a medical certificate, is the policy language requiring the medical certificate a warranty or misrepresentation which must be made with the intent to deceive in order to exclude coverage under LSA-R.S. 22:619?
3. If the medical certificate requirement is not a warranty or misrepresentation, must there be a causal connection between this requirement and the accident in order to exclude coverage under the policy?
4. Did appellant establish that the aircraft was leased or rented to Mr. Little or Mid-South Tank and Utilities, Inc. thereby excluding coverage under the terms of the policy?

ISSUE NUMBER 1
Appellant argues that the trial court erred in finding that it failed to prove that the pilot had no current medical certificate as required by the policy. We find merit to this argument.
*96 The insurer has the burden of proving the applicability of a coverage exclusion. Hampton v. Lincoln National Life Ins. Co., 445 So.2d 110 (La.App. 2d Cir.1984). In civil cases based purely on circumstantial evidence, every other reasonable hypothesis must be excluded in order to satisfy the burden of proof by a preponderance of the evidence. Childs v. Zurich American Insurance Co., 476 So.2d 403 (La.App. 2d Cir.1985), writ denied, 479 So.2d 920 (La.1985).
An appellate court cannot disturb the factual finding of the trial court absent a showing that the finding was clearly wrong. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The aircraft liability policy issued by appellant to West Monroe Charter provided that "[t]he aircraft must be operated in flight only by a person shown below who must have a current and proper (1) medical certificate and (2) pilot certificate with necessary ratings, as required by the FAA for each flight. There is no coverage under the policy if the pilot does not meet these requirements." Albert B. Little was listed as a pilot on the policy, and it is undisputed that he possessed a current and proper pilot certificate with necessary ratings. Appellant sought to prove that Little did not have a current FAA medical certificate.
The medical standards for issuing medical certificates for airmen are prescribed by Code of Federal Regulations Part 67 which has been interpreted by the Federal Air Surgeon in the "Guide for Aviation Medical Examiners." According to the Guide, a private pilot, such as Mr. Little, must have at least a Third-Class medical certificate. A Third-Class medical certificate is valid for the remainder of the month of issue plus twenty-four calendar months.
Medical certificates are issued by an Aviation Medical Examiner (AME) after an examination of the applicant in accordance with the Guide. The Administrator of the FAA designates qualified private physicians as AMEs. Each AME designation is effective for one year but may be renewed each year. The Guide provides for continual evaluation of the designee's performance. An AME is required to mail reports of medical examinations, whether the certificate is issued or denied, to the Aeromedical Certification Branch in Oklahoma City, Oklahoma. Preaddressed mailing envelopes are provided for this purpose.
The National Transportation and Safety Board accident report concerning the crash indicates that the FAA has no record of any medical certificate issued to Albert B. Little since May 26, 1976. Appellant's request to the FAA for Mr. Little's medical records also produced only the 1976 certificate. A statement was sent by appellant to each physician in Monroe and West Monroe who was listed in the Directory of Aviation Medical Examiners, an FAA publication, for the period between February, 1979 and July, 1981. Each physician, except Dr. C.B. Flinn, responded that he had not examined Albert B. Little at any time between January 1, 1979 and July 1, 1981 for the purpose of a pilot's medical certificate. It was stipulated at trial that if Dr. Flinn were present, he would testify that he had been a qualified AME in Monroe until 1979 but is now retired, he could not remember whether he ever examined Mr. Little for a pilot's medical certificate, he did not keep his medical records after retiring, and if he had examined Mr. Little, he would have mailed the results of the examination to the FAA office as required.
In his deposition which was admitted into evidence in lieu of his testimony, Dr. James W. Wade, a Monroe internist specializing in cardiology, stated he first examined Mr. Little in May, 1979 at Glenwood Hospital at the request of Mr. Little's physician, Dr. Fred Bennett. Dr. Wade diagnosed Mr. Little, who had a blood pressure reading of 190/100 in both arms, as having mild essential hypertension. Mr. Little was discharged from the hospital on a mild tranquilizer and blood pressure medication. Dr. Wade continued to see Mr. Little on a regular basis until his last visit just prior to the accident on June 22, 1981. Although Mr. Little only remained on the tranquilizer for approximately five months, he was still *97 taking the blood pressure medication at the time of his last visit to Dr. Wade. A letter to this effect from Dr. Wade is attached to his deposition. Dr. Wade emphasized that Mr. Little's hypertension problem was mild, was under control, and there were no restrictions on his activities. Dr. Wade is not and never has been a medical examiner for the FAA.
Dr. N.R. Spencer, a designated Senior AME in Monroe, was qualified as an expert in the field of aviation medicine, and testified that although he is unfamiliar with the Code of Federal Regulations, he follows the "Guide for Aviation Medical Examiners" when issuing medical certificates. Dr. Spencer stated that AMEs are currently required to attend a seminar every five years. At these seminars, the AMEs are instructed in the proper manner to fill out and forward to the FAA medical certificate forms. At one of these seminars, Dr. Spencer learned of a doctor who filled out his forms but failed to forward them to the FAA. Although Dr. Spencer had never examined Mr. Little, he testified that he had read the depositions of Barbara Little and Dr. Wade, the letter from Dr. Wade concerning Mr. Little, and another AME's findings on Mr. Little made prior to Dr. Wade's letter.
14 C.F.R. § 67.17 sets forth the eligibility requirements for a Third-Class medical certificate and gives the Federal Air Surgeon the authority to determine any limitation which would make an applicant unable to safely perform the duties or exercise the privileges of the airman certificate for which he is applying. According to the Guide, the maximum blood pressure allowed for a man fifty years and older to pass the exam for a Third-Class certificate is 170/100. Dr. Spencer firmly stated that under Item 15 of the Guide, an applicant undergoing treatment with tranquilizers or blood pressure medication would be denied a medical certificate for any class during the period in which he took the medication, regardless of the amount of medication he was taking or his actual blood pressure.
Although Mr. Little's wife, Barbara, originally testified that she could not remember whether Mr. Little was ever treated for high blood pressure, she later testified that Dr. Wade saw and treated him for high blood pressure in the hospital in 1979 and thereafter. She also testified that she did not think the 1979 hospitalization was the first time he had been treated for high blood pressure. Mrs. Little believed that Dr. Wade had given her husband some medication, but she did not know what type of medication it was, how long he took it, or what kind of medication, if any, he was taking at the time of his death. She further testified that Mr. Little had a blood pressure machine at home and that he was overweight and continually trying to lose weight after his hospitalization.
According to Mrs. Little, she did not go through Mr. Little's wallet after the accident and has not found his medical certificate. She identified her husband's signature on a letter to the FAA dated May 19, 1978 reporting that his wallet containing his medical certificate had been stolen. Mrs. Little did not testify, as found by the trial court in his written reasons for judgment, that Mr. Little lost his wallet a few months before the accident. Mrs. Little was unaware of her husband seeing any doctor, including an out-of-town doctor, other than Dr. Ronnie Woods of West Monroe for his FAA medical examination.
Mr. Little's brother, Henry Little, testified that he was close to his brother and they saw each other almost every day. Henry Little knew that Mr. Little had quit flying for a period of time after his hospitalization when he had high blood pressure and had only resumed flying shortly before the accident. Henry Little testified that although he had seen his brother take medication, he did not know what type it was, nor was he aware of his brother seeing any doctor outside of Monroe or West Monroe.
Sam O. Henry, III testified that he considered himself to be Mr. Little's best friend. They worked out and ran together two or three times per week. Mr. Henry did not remember Mr. Little mentioning any blood pressure problems, nor did he remember seeing him take any medication or seeing any prescription bottles. Mr. *98 Henry further testified that although he had no reason to believe that Mr. Little did not have a current medical certificate at the time of the crash, he had no personal knowledge as to whether Mr. Little actually did have the medical certificate. Mr. Henry testified that Mr. Little had his weight down and was in good health at the time of the crash.
Despite Dr. Spencer's knowledge of one physician who did not forward any of his examination reports to the FAA, the absence of FAA records of a medical certificate for Mr. Little since May 26, 1976 is strong evidence that he did not have a current medical certificate at the time of the crash on July 1, 1981. Mr. Little would have been required to pass two medical examinations between May 26, 1976 and July 1, 1981 in order for his medical certificate to have remained current from the time of this examination in 1976 to the time of the crash. It is improbable that Mr. Little underwent two examinations and, in both instances, the forms were not mailed to the FAA. Appellees did not counter the appellant's evidence of the absence of a record of a medical certificate by producing a certificate or by any other evidence that Mr. Little had a current certificate. The wallet Mr. Little had with him at the time of the crash was returned to Mrs. Little. The fact that his wallet had been stolen in 1978 is not significant because in order to have been current at the time of the crash, his medical certificate must have been issued in July, 1979 or later. It is not likely that Mr. Little would have chosen to see a doctor outside of Monroe or West Monroe, his hometown, where there were several AMEs available and where he had his previous FAA examinations done. Several witnesses testified he likely would have gone to Dr. Woods for the examination. According to Dr. Wade, Mr. Little was taking blood pressure medicine from May, 1979 until June, 1981. Dr. Spencer's testimony that Mr. Little would have been denied a medical certificate due to his use of this medication is convincing.
Under these circumstances, the trial judge was clearly wrong in finding that appellant failed to prove that Mr. Little did not have a current and proper medical certificate. The preponderance of the evidence, excluding every reasonable hypothesis to the contrary, is that Mr. Little did not have a current medical certificate at the time of the accident.

ISSUE NUMBER 2
Appellees argue that the language in the policy requiring the pilot to have a valid medical certificate is a representation or warranty triggering the applicability of LSA-R.S. 22:619(A), an anti-technical statute requiring proof that the insured made the representation or warranty with the intent to deceive in order to defeat coverage. We do not agree that the policy language involved is merely a representation or warranty.
In support of their argument, appellees rely on Benton Casing Service, Inc. v. Avemco Insurance Co., 379 So.2d 225 (La. 1979), in which Benton brought suit against its insurer, Avemco, to recover for the loss of an airplane. Avemco denied coverage on the ground that the pilot operating the aircraft at the time of the crash was not named on the declarations page of the policy although he did have the qualifications required by the insurer of a named pilot. Coverage C of the policy obligated the insurer "to pay for all loss or damage to the aircraft while in flight ...," but Item 7 of the declarations provided that "[t]his policy applies when the aircraft is in flight, only while being operated by one of the following pilots ... who ... holds a valid and effective [FAA] certificate...." The Supreme Court held Item 7 of the declarations was not an exclusion, but rather a statement made by the insured in the negotiation of an insurance contract that the only pilot who would be flying the aircraft was named in the policy. Such a statement would not defeat the coverage afforded by the policy unless it had been made with the intent to deceive. LSA-R.S. 22:619(A).
In contrast, coverage was excluded under similar circumstances in Compass Insurance Co. v. Vanguard Insurance Co., 649 F.2d 331 (5th Cir.1981), where the pilot, although named on the policy, failed to *99 possess the FAA certification required by the policy. In distinguishing Benton, the Fifth Circuit stated:
... Three principal factors influenced the [Benton] court. First, the provision appeared in the "Declarations" section of the policy rather than in the "Exclusions" section, and none of the exclusions specifically referred to it. Second, if the endorsement were considered an exclusion, it would have rendered the policy ambiguous because it was not on its face limited to particular types of coverage and thus would have contradicted the policy's coverage of loss when the plane was flown by a thief. And third, Benton's plane was in fact flown by a certified pilot but one whose name had not been listed on the endorsement, and the insurance company routinely allowed Benton to add certified pilots to those listed on the endorsement by simply informing the company (and possibly paying a higher premium).
None of these three circumstances from Benton are present here. First, the pilot qualification provisions here were expressly incorporated in the exclusions section of the policy. Second, the provisions apply only to M-8 coverage and do not generate ambiguity in the rest of the policy. And finally, Billings was not a certified pilot.

Compass, at p. 335.
Item 9 of the Coverage Identification Page of the policy in question provides:
The aircraft must be operated in flight only by a person shown below who must have a current and proper (1) medical certificate and (2) pilot certificate with necessary ratings, as required by the FAA for each flight. There is no coverage under the policy if the pilot does not meet these requirements.
Part One of the policy, General Provisions and Conditions, provides:
3. The Pilot Flying the Aircraft.
You [the insured] must make certain that the pilot operating the aircraft in flight meets the requirements shown in Item 9 of the Coverage Identification Page. There is no coverage under the policy if the pilot does not meet these requirements.
The policy under Part Three, Liability to Others, provides:
4. What Is Not Covered.
We do not cover any:
a. Pilots and Use
Bodily injury or property damage unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met.
Under these provisions, the requirement that the pilot have a current and proper medical certificate as required by the FAA is expressly incorporated in the exclusions section of the policy. Furthermore, viewing this provision as an exclusion does not render the policy ambiguous. Lastly, the pilot, Albert B. Little, did not possess the required FAA medical certificate. For these reasons, we distinguish the policy involved in this case from the policy involved in Benton and hold that the policy language requiring the pilot to possess a current and proper medical certificate is an exclusion rather than a warranty or representation. Therefore, it was not necessary for the insurer to establish an intent to deceive in order to avoid coverage under the policy.

ISSUE NUMBER 3
Appellees also argue there must be a causal connection between the failure to comply with the requirement that the pilot possess a current and proper FAA medical certificate and the accident in order to exclude coverage under the policy. We hold that Louisiana law does not require a causal connection between a condition or exclusion contained in a liability insurance policy and the accident as a prerequisite to applicability of the exclusion.
In support of their argument, appellees rely on Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir.1982), writ denied, 410 So.2d 1133 (La.1982), and several cases from other jurisdictions requiring a causal connection between the exclusion *100 and the accident.[1] The policy language involved in Little and in the authorities cited therein clearly provided for or implied a causal connection between the exclusion and the accident in order to exclude coverage under the policy, that is, that the loss arise out of the excluded activity or circumstances. In Little, the excluded activity had ceased and had no connection with or relation to the loss. Here, the excluded activity was taking place at the time of the loss and while not the cause of the loss, had a connection with the loss. Here, the accident occurred while the plane was in flight, piloted by one who did not meet the policy requirements even though the pilot's lack of a medical certificate did not cause or contribute to the accident. Absent language requiring a causal connection, there is no Louisiana statutory or jurisprudential rule imposing such a requirement, and we are not persuaded by cases from other jurisdictions which impose this requirement.
The exclusionary language in the policy involved in the instant suit does not lend itself to an interpretation requiring a causal connection between the requirement that the pilot possess a current and proper FAA medical certificate and the accident. To impose such a requirement would only serve to alter the agreement between the parties to the insurance contract. In Rodriguez v. Northwestern Nat'l Ins. Co., 358 So.2d 1237 (La. 1978), the court stated that Louisiana jurisprudence has held that an insurer is not required by the anti-technical statute to show a causal relation between a breach of warranty and a loss to avail itself of a warranty defense under a fire insurance policy. Named driver exclusions and other exclusions under the automobile liability policies have been applied without requiring a causal connection between the exclusion and the accident. See Smith v. Western Preferred Casualty Co., 424 So.2d 375 (La.App. 2d Cir.1982), writ denied, 427 So.2d 1212 (1983); Baker v. Fireman's Fund Ins. Co., 309 So.2d 362 (La. App. 2d Cir.1975), writ denied, 313 So.2d 603 (1975); Hurst v. Hardware Mut. Casualty Co., 234 So.2d 802 (La.App. 1st Cir. 1970), writ denied, 256 La. 618, 237 So.2d 398 (1970); Stacy v. Petty, 362 So.2d 810 (La.App. 3d Cir.1978). The same rule should apply to an exclusion defense under a liability policy.
In this case, the failure of the pilot to have a current and proper medical certificate at the time of the crash excludes coverage *101 under the express terms of the policy.

ISSUE NUMBER 4
Appellant also argues that the trial court erred in finding that it failed to prove that West Monroe Charter had leased or rented the aircraft involved in the crash to Mid-South. Although we have held that coverage was excluded under other provisions of the policy, we have nevertheless considered this additional argument and find it to be without merit.
Item 10 of the Coverage Identification Page provides:
The aircraft must be used for personal or business transportation only. There is no coverage under the policy if the aircraft (1) is leased or rented to or hired by others; (2) is used for any unlawful purpose; (3) use requires a special permit or waiver from the FAA; or (4) airworthiness certificate is not in full force and effect or has been converted to restricted or experimental.
Part One of the policy, General Provisions and Conditions, provides:
4. The Use of the Aircraft.
You [the insured] must make certain that the aircraft is used for personal or business transportation only. There is no coverage under the policy if the aircraft:
a. Is leased or rented to or hired by others.
* * * * * *
The policy under Part Three, Liability to Others, provides:
4. What Is Not Covered.
We do not cover any:
a. Pilots and Use
Bodily injury or property damage unless the requirements of the Coverage Identification Page regarding Pilots (Item 9) and Use (Item 10) are met.
According to the testimony of Sam Henry, the title to the aircraft was held by West Monroe Charter. Mr. Henry owned one-half of the corporate stock of West Monroe Charter and Mr. Little owned the other one-half. The aircraft was used strictly by Mr. Henry and Mr. Little for both business and personal flights. When either Mr. Henry or Mr. Little used the aircraft, he was billed at an agreed upon rate of $35.00 per flight hour. This amount was paid to West Monroe Charter to cover the cost of fuel and maintenance to the aircraft. West Monroe Charter was never operated as a charter service but rather was formed as a convenient way to hold title to the aircraft and account for the expenses incurred in the operation and maintenance of the aircraft.
At the time of the crash, Mr. Little was piloting the aircraft on the business of Mid-South, a corporation wholly owned by him. The trial court was correct in holding that the aircraft was not leased or rented to Mr. Little or Mid-South within the contemplation of this policy exclusion at the time of the crash. Coverage was not excluded under the policy provisions relative to rental or lease of the aircraft.

DECREE
The judgment of the trial court declaring that liability coverage was provided under the aircraft liability insurance policy issued by United States Fire Insurance Company to West Monroe Charter Service, Inc. is reversed. Judgment is rendered in favor of appellant and against appellees declaring that the liability insurance policy issued by appellant to West Monroe Charter Service, Inc. does not provide liability coverage for the losses sustained in the crash of the insured airplane on July 1, 1981.
REVERSED AND RENDERED.
NOTES
[1] Most of the cases in other states have not required a causal connection and have given effect to the exclusion under similar policy provisions and circumstances. See Edmonds v. United States, 642 F.2d 877 (1st Cir.1981), applying Massachusetts law; Ideal Mut. Ins. Co. v. C.D.I. Constr., Inc., 640 F.2d 654 (5th Cir.1981), applying Florida law; Hollywood Flying Svc., Inc. v. Compass Ins. Co., 597 F.2d 507 (5th Cir.1979), applying Florida law; Arnold v. Globe Indem. Co., 416 F.2d 119 (6th Cir.1969), applying Kentucky law; Electron Mach. Corp. v. American Mercury Ins. Co., 297 F.2d 212 (5th Cir.1961), applying Florida law; Bruce v. Lumbermens Mut. Casualty Co., 222 F.2d 642 (4th Cir.1955), applying North Carolina law; DiSanto v. Enstrom Helicopter Corp., 489 F.Supp. 1352 (E.D.Pa.1980); Omaha Sky Divers Parachute Club, Inc. v. Ranger Ins. Co., 189 Neb. 610, 204 N.W.2d 162 (1973); Blue Ridge Textile Co. v. Travelers Indem. Co., 407 Pa. 463, 181 A.2d 295 (1962); Kilburn v. Union Marine & Gen. Ins. Co., 326 Mich. 115, 40 N.W.2d 90 (1949); Ochs v. Avemco Ins. Co., 54 Or.App. 768, 636 P.2d 421 (1981), cert. denied, 292 Or. 356, 644 P.2d 1128 (1982); Goddard v. Avemco Ins. Co., 43 Or.App. 39, 602 P.2d 291 (1979); Macalco, Inc. v. Gulf Ins. Co., 550 S.W.2d 883 (Mo.Ct.App.1977); Insurance Co. of N. Am. v. Lynpal, Inc., 14 Av.Cas. (CCH) 18,067 (Tenn.Ct.App.1977); Ranger Ins. Co. v. Columbus-Muscogee Aviation, Inc., 130 Ga.App. 742, 204 S.E.2d 474 (1974); Aetna Casualty & Surety Co. v. Urner, 264 Md. 660, 287 A.2d 764 (1972); Baker v. Insurance Co. of N. Am., 10 N.C.App. 605, 179 S.E.2d 892 (1971); Glades Flying Club v. Americas Aviation & Marine Ins. Co., 235 So.2d 18 (Fla.Dist.Ct.App.1970).

Some cases in other states have refused to apply the exclusion or condition in the absence of a causal connection between the exclusion or condition and the accident. See Hall's Aero Spraying, Inc. v. Underwriters at Lloyds, London, 274 F.2d 527 (5th Cir.1960), applying Texas law; Migues v. Universal Airways, Inc., 18 Av.Cas. (CCH) 17,250 (S.D.Miss.1982); Bayers v. Omni Aviation Managers, Inc., 510 F.Supp. 1204 (D.Mont. 1981); American States Ins. Co. v. Byerly Aviation, Inc., 456 F.Supp. 967 (S.D.Ill.1978); Avemco Ins. Co. v. Chung, 388 F.Supp. 142 (D.Hawaii 1975); Puckett v. United States Fire Ins. Co., 678 S.W.2d 936 (Tex. 1984); South Carolina Ins. Co. v. Collins, 269 S.C. 282, 237 S.E.2d 358 (1977); Pickett v. Woods, 404 So.2d 1152 (Fla.Dist.Ct.App.1981).