STEWART, Judge.
Plaintiff, Robert Gatti (Gatti), sued defendants, McCollister Company (McCollis-ter), its insurer, United States Fidelity and Guaranty Company (USF & G); and the City of Shreveport (the City)[1]. Gatti sought compensation for the damage to his fence and the loss of his cows from two separate incidents allegedly caused by McCollister’s equipment.
The trial court rendered judgment in favor of the defendants, finding that Gatti failed to prove by a preponderance of the evidence that there was any fault or negligence of McCollister which was the cause of his loss. From this judgment, Gatti appeals. We affirm.
FACTS
In the spring of 1987, the City was constructing a landfill on a tract of land north of Gatti’s property. The City contracted McCollister to erect a fence along the north boundary of Gatti’s property. The fence was erected as contracted approximately 12 feet from Gatti’s fence.
The first incident occurred in April 1987 when Gatti discovered a hole in his fence. Gatti testified that he concluded that a bushhog had run too close to the fence and snagged it, breaking three strands of wire which allowed his cows to escape through the hole caused by the bushhog. Gatti testified that he had the fence repaired and no other cows escaped.
The second incident occurred about three weeks later in May 1987. Gatti testified that he was searching for the cows that had previously escaped when he discovered *471 a large portion of his fence had been destroyed by a bulldozer that had run up against it and pulled it down.
Gatti testified that he saw tracks where the cows had escaped through the broken fence. Gatti “patched up” the fence and contacted William McCollister, the owner-contractor of McCollister, regarding the damage to his fence.
A.B. Thomas, Gatti’s handyman; Kyle Williams, a Grace Construction Company[2] engineer; and John Pruett, a Grace Construction foreman, corroborated Gatti’s version of the second incident. Thomas, Williams, and Pruett all testified that they observed the hole in the fence in May 1987 and they all concluded that someone’s equipment had snagged the fence and broken the wires. However, Thomas, Williams, and Pruett concede that they did not see who or how the fence was damaged.
Clement Douzart, a former mechanic for Grace Construction Company, testified through deposition that he saw cows on the landfill on two different occasions prior to when McCollister began to clear the area to construct the fence. Douzart testified that Gatti’s fence was old and in “ill repair.” Douzart further testified that a tree had fallen across Gatti’s fence and mashed all the wires from the top down to the ground.
Mike Strong, the supervisor of the construction of the landfill, testified that he was notified that there was a problem with the fence at the landfill and that McCollis-ter had torn down a section of fence and let some of Gatti’s cows out. Strong further testified that he went out to the landfill and did not find any damage to Gatti’s fence which was caused by any equipment. However, Strong testified that Gatti’s fence had some timber across it in different areas.
Wesley Thomisee, the foreman for McCollister, testified that he directly supervised the bushhogging and all precautions were taken to assure no damage occurred to any of the adjoining property which in-eluded Gatti’s fence. Thomisee testified that he noticed a pine tree by the side of Gatti’s fence and the top of the tree had fallen on the fence and torn a hole in it. Thomisee testified the tree top “knocked” the fence down allowing the cows to escape through the hole in the fence. Thomisee further testified that he reported this incident to William McCollister.
William McCollister testified he was contacted by Gatti regarding damage to his fence allegedly caused by McCollister’s equipment. William McCollister testified that he went out to the landfill to inspect the fence and found a small tree top on the fence which had made a hole in the fence. He further testified that there were hoof prints on the ground where the cows had gone through the hole in the fence.
DISCUSSION
The issue in this tort case is whether the trial court committed manifest error in dismissing Robert Gatti’s demand on the basis that he failed to satisfy his burden of proving by a preponderance of the evidence that McCollister’s negligence was the sole cause of the damage to Gatti’s fence and the loss of his cows.
The plaintiff in a civil suit bears the burden of proving negligence of the defendant by a preponderance of the evidence. Miller v. Leonard, 588 So.2d 79 (La.1991); Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the entirety of the evidence establishes the fact or causation sought to be proved is more probable than not. Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972). Thus, a plaintiff must produce evidence from which the fact finder can reasonably conclude that his loss, more probably than not was caused by the negligence of the particular defendant.
*472 If a party bearing the burden of proof fails to satisfy his burden of proof by a preponderance of the evidence, his case fails and he necessarily loses. Miller v. Leonard, supra.
After hearing the testimony and reviewing the evidence presented, the trial judge concluded that Gatti’s photographs, particularly Exhibits P-1, P-2, P-5, and P-6, did not reflect that any of McCollister’s equipment damaged Gatti’s fence. He further concluded from Gatti’s photographs, particularly Exhibits P-2 and P-5, that the fence was damaged by a fallen tree limb from Gatti’s property.
The trial judge noted that both direct or circumstantial evidence is sufficient to constitute . a preponderance when taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not. Foster v. Craig Equipment Company, 550 So.2d 818, 823 (La.App.2d Cir.1989). However, he noted that in civil cases based purely on circumstantial evidence, every other reasonable hypothesis must be excluded in order to satisfy the burden of proof of by a preponderance of the evidence. U.S. Fire Insurance Company v. West Monroe Charter Service, 504 So.2d 93, 96 (La.App.2d Cir.1987), writ denied, 505 So.2d 1141 (La.1987). The trial judge found that Gatti failed to exclude every reasonable hypothesis in order to satisfy his burden proof by a preponderance of the evidence.
Based on this record, there was evidence from which the trial judge reasonably concluded that McCollister was not at fault. Absent manifest error, a trial judge’s findings are entitled to great deference and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
CONCLUSION
Accordingly, we affirm the trial court judgment. Costs of this appeal are assessed against plaintiff, Robert Gatti.
AFFIRMED.

. In a pre-trial stipulation, Gatti and McCollister agreed that any and all liability which might be found at trial to be attributable to the City, would be assessed against McCollister and its insurer, USF & G.

. Grace Construction Company was a construction company also involved in the landfill project.