OLD REPUBLIC INSURANCE
COMPANY, a Pennsylvania
corporation Plaintiff,

v.

Kevin JENSEN, M.D., et
al., Defendants.

No. CV–N–02–0252–LRH(VPC).

United States District Court,
D. Nevada.

Aug. 5, 2003.

*ORDER*

HICKS, District Judge.

## I. INTRODUCTION

This action was brought by Old Republic Insurance Company (hereinafter "Plaintiff" or "Old Republic") for a declaration of its liability under a policy of insurance issued to Kevin Jensen ("Defendant Jensen")[1] to cover him for certain risks attendant to the operation of his private single-engine Piper Cherokee 235 aircraft. Pending before the Court is Plaintiff's Motion for Summary Judgment filed pursuant to Fed.R.Civ.P. 56(c). The Court, by its Order of June 3, 2003, set a hearing on the Plaintiff's motion for June 5, 2003. All parties appeared at that hearing, and the Court heard argument from Plaintiff's counsel as well. as respective counsel for Defendant Jensen and Defendant Griffin. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment (# 15) will be granted.

## II. STATEMENT OF FACTS

The relevant facts of this case are not in dispute. Defendant Jensen purchased the aircraft on June 21, 2001. The June Purchase Agreement, signed by Defendant Jensen, states that "he or his authorized mechanics/agents have fully inspected the described aircraft, related airworthy paperwork, log books, etc." The Delivery and Acceptance statement, also signed by Kevin Jensen, confirms that Jensen or his mechanic personally inspected all of "the log books and related airworthy paperwork associated with [the] aircraft" and they found "the aircraft to be in airworthy condition." The airframe log reflects that Aviation Services Inc. in Reno, Nevada, performed the last annual inspection on the aircraft on July 13, 2000.

Subsequent to purchasing the aircraft, Defendant Jensen purchased aircraft insurance from Old Republic. Old Republic's policy of insurance, issued to Defendant Jensen, excludes coverage "if the Airworthiness Certificate of the aircraft is not in full force and effect" or "if the aircraft has not been subjected to appropriate airworthiness inspection(s) as required under current applicable Federal

---

1. Kevin Jensen and his wife Lois Jensen are referred to collectively herein as Defendant Jensen.

Air Regulations for the operations involved."

Shortly after Defendant Jensen purchased the aircraft, he noticed it was having engine trouble. On July 25, 2001, he took the aircraft to El Aero Services Inc. ("El Aero") in Carson City and made arrangements with an El Aero mechanic to have the engine inspected. Defendant Jensen signed an El Aero work order, which authorized the El Aero mechanic to complete whatever engine work he determined was necessary on the aircraft.

Although not essential to the Court's analysis, it should be noted that the parties dispute the contents of the discussion between Defendant Jensen and the El Aero mechanic over the scope of the work that was to be performed on the aircraft. Jensen claims to have given the mechanic and an El Aero secretary instructions to the effect that El Aero should "do everything necessary to make the aircraft safe." This, Defendant Jensen argues included an annual inspection. Both Jensen and the El Aero mechanic acknowledge discussing the annual inspection. However, the mechanic denies that Jensen instructed El Aero to perform an annual inspection on the aircraft.

The aircraft was at El Aero from July 25 to August 8, 2001. Defendant Jensen did not obtain or check the aircraft logbooks after the repairs were completed. The logbooks remained with El Aero employees, who expected Jensen to retake possession of them when he paid for the repairs. The July 25, 2001, work order, signed by Jensen, makes no mention of an annual inspection, nor anything other than the repairs to the rough-running engine. The completed work order and the invoice for work completed also contain no mention of an annual inspection. According to Jensen's statement, the work order and invoice were mailed to him on August 20, 2001, and he acknowledges they were received by his office on August 22 or 23, 2001.

On September 1, 2001, Kevin Jensen and his wife Lois Jensen embarked on a flight around the surrounding area of Carson City, Nevada. While on final approach to the Carson City Airport, the aircraft rapidly lost altitude and crashed short of the runway. The cause of the accident could not be determined by the subsequent accident investigation. Defendant Jensen speculates, however, that shortly before crashing he either switched to the wrong fuel tank (presumably an empty one) or a problem developed in a fuel line or other part of the fuel system.

As a result of the accident, Kevin Jensen and his wife Lois Jensen were both seriously injured and the aircraft was destroyed. The accident site was located in the backyard of a residence belonging to Robert Griffin, also a Defendant in this action. Defendant Griffin has suffered severe and life-altering injuries and his property suffered damage as a result of the accident. Defendant Griffin is seeking compensation for his injuries in an action brought by him against Kevin Jensen in the First Judicial District Court of the State of Nevada.

It is undisputed that the annual airworthiness inspection was not performed before the accident, and the last prior annual inspection was performed on the aircraft in July 2000. Thus, for purposes of the federal regulations and the Old Republic policy—the aircraft was not airworthy at the time of the crash. Plaintiff, therefore, relying on the exclusionary clause in its policy declined to provide insurance coverage or defend Jensen following the accident.

## III. STANDARD OF REVIEW

A motion for summary judgment is a procedure that terminates, without a trial, actions in which "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A summary judgment motion may be made in reliance on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Id.*

The movant is entitled to summary judgment if the nonmoving party, who bears the burden of persuasion, fails to designate " 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). Thus, to preclude a grant of summary judgment, the nonmoving party must set forth " 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(quoting Fed.R.Civ.P. 56). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001) (citing *Zenith Radio Corp.*, 475 U.S. at 587, 106 S.Ct. 1348).

Although the nonmoving party has the burden of persuasion, the party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Metro Indust., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.1996). That burden is met by showing an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. 2505. In meeting this burden, the nonmoving party must go "beyond the pleadings and by its own evidence present specific facts showing that there is a genuine issue for trial." *Far Out Prods. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001) (citing *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996)) (quotations omitted).

## IV. DISCUSSION OF POLICY COVERAGE

The basic question in need of determination in this action is the Plaintiff's liability, if any, under the policy it issued to Kevin Jensen. Naturally, as jurisdiction is invoked upon diversity of citizenship in this case, this Court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262 (9th Cir.1978). Thus, Nevada law controls.

The Plaintiff argues that the policy issued to Defendant Jensen does not afford coverage for the accident. Specifically, Plaintiff argues that Jensen was operating the aircraft without the appropriate airworthiness inspection and certification, thereby excluding coverage under an express provision of its aviation policy.

The Defendants respond by arguing that the aviation policy should afford coverage for the accident regardless of the exclusionary clause. In support of this response, the Defendants individually or mutually make the following arguments: (1) there must be a causal link between the claimed non-compliance with the policy provision and the accident itself; (2) Nevada Revised Statute 687B.110 acts as an anti-technicality statute and is applicable to this case; (3) the insurance policy was not part of the contract and Defendant Jensen did not have notice of the exclusion; and (4) additional discovery is needed to determine if there is a material issue of fact.

## 1. Policy in Effect

As noted above, Old Republic's aviation policy issued to Defendant Jensen contained a clause excluding coverage "if the Airworthiness Certificate of the aircraft is not in full force and effect" or "if the aircraft has not been subjected to appropriate airworthiness inspection(s) as required under current applicable Federal Air Regulations for the operations involved." [2] There is no dispute that the aircraft did not have its airworthiness certificate or annual inspection at the time of the accident. According to Plaintiff, because Jensen was operating the aircraft without the appropriate airworthiness inspection and certification, coverage is excluded under an express provision of its aviation policy. To determine Plaintiff's liability, if any, the Court looks to Nevada insurance law.

Nevada courts apply fundamental tenets of insurance law to the interpretation of insurance contract language. Under Nevada law, an insurance policy is a contract of adhesion. *Harvey's Wagon Wheel v. MacSween*, 96 Nev. 215, 219–20, 606 P.2d 1095, 1098 (1980). As such it should be interpreted broadly, affording the greatest possible coverage to the insured. *Id.* Ambiguity in an insurance contract must be interpreted against the drafting party and in favor of the insured. *Neumann v. Standard Fire Ins.*, 101 Nev. 206, 209, 699 P.2d 101, 104 (1985), *citing Yosemite Ins. Co. v. State Farm Mut.*, 98 Nev. 460, 653 P.2d 149 (1982).

However, in spite of these axioms, a Nevada court will not rewrite contract provisions that are otherwise unambiguous. *Farmers Ins. Group v. Stonik*, 110 Nev. 64, 67, 867 P.2d 389, 391 (Nev. 1994). In addition, a Nevada court will not increase an obligation to the insured where such was intentionally and unambiguously limited by the parties. *Senteney v. Fire Ins. Exchange*, 101 Nev. 654, 707 P.2d 1149 (1985); *see also Farmers Ins. Group*, 110 Nev. at 67, 867 P.2d 389. Finally, in construing an insurance contract "the terms of the parties should be taken and understood in their plain, ordinary and popular sense." *Richfield Oil Corp. v. Harbor Insurance Company*, 85 Nev. 185, 452 P.2d 462, 466 (1969).

Defendant Jensen first argues that he did not have notice of the exclusionary provisions in the policy and the policy was not part of his contract with Old Republic. He claims that a verbal contract was entered into between the parties a month prior to receiving the policy via U.S. mail. Further, Defendant Jensen claims he never signed an insurance application.[3] Defendant Jensen's arguments are contradicted by the facts, however.

Plaintiff has provided copies of the insurance application with Defendant Jensen's signature. As a simple matter of textbook contract law, Defendant Jensen agreed to be bound by the terms of the application when he signed it on June 27, 2001. Furthermore, Defendant Jensen initialed a clause in the application, which states that there would be no coverage "unless a STANDARD airworthiness cer-

**2.** Under the Federal Air Regulations, CFR § 91.409(a) provides, in pertinent part, that "no person may operate an aircraft unless, within the preceding 12 calendar months, it has had (1) An annual inspection in accordance with part 43 of this chapter and has been approved for return to service by a person authorized by § 43.7 of this chapter; or (2) An inspection for the issuance of an air-

worthiness certificate in accordance with part 21 of this chapter."

**3.** Interestingly, counsel for Defendant Jensen did not make this argument before the Court on June 5, 2003. Furthermore, counsel for Defendant Jensen did not dispute Plaintiff's arguments regarding Defendant Jensen's signature on the application.

tificate is in full force and effect." Furthermore, the application clearly states that: "Insurance evidenced by this application is subject to all terms, conditions and limitations of the policy(ies) in current use by the company." Defendant Jensen received the policy in mid-July, 2001. The policy, like the application, contained unambiguous exclusionary language relating to the airworthiness inspection and certificate. Thus, Defendant Jensen had more than adequate notice of the exclusion.

Additionally, the Court finds that the exclusionary clause limiting liability in Old Republic's policy was clear and unambiguous.[4] The Court finds that a lay person would reasonably expect after reading the exclusion (both in the application and policy) that coverage would be denied if the airworthiness certificate was not in effect, regardless of whether the insured had knowledge that it was not in effect. In sum, Defendant Jensen had notice of the exclusion and the policy was part of the contract between the parties.

The Court's analysis does not stop here, however, because Defendants argue that there should be coverage under the policy in spite of the lack of a valid airworthiness inspection and certificate. The Defendants argue that there must be a causal connection between the crash and the claimed violation of the policy in order for coverage to be excluded under the policy.

### 2. Causality

■ Defendants argue specifically that there must be a causal connection between the failure to conduct the annual inspection and the accident for coverage to be excluded under the policy.[5] Defendants further

argue that there is no such causality in this case.

Defendant Jensen alleges that while on approach to the Carson City airport and shortly before crashing, his aircraft experienced mechanical difficulties or he committed pilot error. Defendant Jensen speculates that he either switched to the wrong fuel tank or there was a problem with a fuel line. Either way, he argues, an annual inspection would not have revealed the problem that ultimately caused the accident.

He supports this argument with a determination by the National Transportation and Safety Board ("NTSB"). The NTSB, through its post-accident investigation, reportedly found that Jensen's aircraft would have crashed regardless whether its annual inspection and certification were current and in effect. Therefore, Defendant Jensen argues that the Court should not allow Old Republic to deny coverage because of a minor technical breach.

As far as this Court can determine, and the parties apparently agree with this determination, this issue is one of first impression in Nevada. As noted, jurisdiction in this action is based on diversity of citizenship and the Court is bound to apply the substantive law of Nevada. *Erie Railroad*, 304 U.S. 64, 58 S.Ct. 817; *Strassberg*, 575 F.2d 1262. Where there is an absence of controlling Nevada law, however, the Court must use its best judgment in predicting how the Nevada Supreme Court would decide the substantive issues. *See Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986), *modified*, 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316

---

**4.** A number of courts have held similar exclusions relating to annual inspections and airworthiness certificates to be clear and unambiguous. *See, e.g., Avemco Ins. Co. v. White*, 841 P.2d 588 (Okla.1992) ("This policy does not apply ... [t]o any Insured who operate

...the aircraft, while in flight, unless its airworthiness certificate is in full force and effect. . . .").

**5.** The exclusionary clause in the policy itself has no causality requirement.

(9th Cir.1980). In performing this function, the Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Id.* Not surprisingly, the parties take vastly different positions as to how the Nevada Supreme Court would rule on the issue of causality.

Plaintiff, naturally contends that the Nevada Supreme Court would not require the existence of a causal connection between the accident and breach of the policy term or provision to exclude coverage. In support of this contention, Plaintiff cites cases from jurisdictions across the United States, which have found that no causal connection need exist between accident and breach of an aviation policy term or

provision in order to find exclusion of coverage valid. In fact, the vast majority of cases reject the view that causality is required between the accident and the breach of a policy.[6]

Defendants, on the other hand, have provided a list of cases from jurisdictions that have found a causal connection necessary in order to exclude coverage. Defendants urge the Court to follow these cases, which they refer to as the "modern trend." In spite of the Defendants' assertions regarding the "modern trend," these cases represent a small minority. In fact, it would be inaccurate to suggest that there is a significant split of authority on this issue.[7] There are few cases that have re-

---

6. *See, e.g., Bequette v. National Ins. Underwriters, Inc.,* 429 F.2d 896 (9th Cir.1970) (applying Alaska law); *Security Ins. Co. v. Andersen,* 158 Ariz. 426, 763 P.2d 246 (1988); *National Union Fire Ins. Co. v. Estate of Meyer,* 192 Cal.App.3d 866, 237 Cal.Rptr. 632 (1987); *National Ins. Underwriters v. Mark,* 704 F.Supp. 1033 (D.Colo.1989); *Hollywood Flying Serv., Inc. v. Compass Ins. Co.,* 597 F.2d 507 (5th Cir.1979); *Florida Power & Light Co. v. Foremost Ins. Co.,* 433 So.2d 536 (Fla.Dist. Ct.App.1983); *Grigsby v. Houston Fire & Casualty Ins. Co.,* 113 Ga.App. 572, 148 S.E.2d 925 (1966); *Roberts v. Underwriters at Lloyds London,* 195 F.Supp. 168 (D.Idaho 1961); *Johnson v. Security Ins. Co.,* 135 Ill.App.3d 690, 90 Ill.Dec. 352, 481 N.E.2d 1263, (1985); *American States Ins. Co. v. Byerly Aviation, Inc.,* 456 F.Supp. 967 (S.D.Ill.1978); *Western Food Prods. v. U.S. Fire Ins. Co.,* 10 Kan. App.2d 375, 699 P.2d 579 (1985); *Arnold v. Globe Indem. Co.,* 416 F.2d 119 (6th Cir. 1969); *U.S. Fire Ins. Co. v. West Monroe Charter Service,* 504 So.2d 93 (La.App.), *writ denied,* 505 So.2d 1141 (La.1987); *Aetna Casualty & Sur. Co. v. Urner,* 264 Md. 660, 287 A.2d 764 (1972); *Edmonds v. United States,* 642 F.2d 877 (1st Cir.1981) (applying Massachusetts law); *Kilburn v. Union Marine & Gen. Ins. Co.,* 326 Mich. 115, 40 N.W.2d 90 (1949); *Omaha Sky Divers Parachute Club, Inc. v. Ranger Ins. Co.,* 189 Neb. 610, 204 N.W.2d 162 (1973); *Hedges Enter., Inc. v. Fireman's Fund Ins. Co.,* 34 Misc.2d 249, 225 N.Y.S.2d 779 (1962); *Security Mut. Casualty Co. v. O'Brien,* 99 N.M. 638, 662 P.2d 639 (1983); *Bellefonte Underwriters Ins. Co. v. Alfa Aviation, Inc.,* 61 N.C.App. 544, 300 S.E.2d 877 (1983), *aff'd,* *181 310 N.C. 471, 312 S.E.2d 426 (1984); *American Continental Ins. Co. v. Estate of Gerkens,* 69 Ohio App.3d 697, 591 N.E.2d 774 (1990); *Avemco Ins. Co. v. White,* 841 P.2d 588 (Okla.1992); *Ochs v. Avemco Ins. Co.,* 54 Or.App. 768, 636 P.2d 421 (1981), *petition for review denied,* 292 Or. 450, 644 P.2d 1128 (1982); *DiSanto v. Enstrom Helicopter Corp.,* 489 F.Supp. 1352 (E.D.Pa.1980); *United States Fire Ins. Co. v. Producciones Padosa, Inc.,* 835 F.2d 950 (1st Cir.1987) (applying Puerto Rico law); *Economic Aero Club, Inc. v. Avemco,* 540 N.W.2d 644 (S.D.1995); *Powell Val. Elec. Co-op. v. United States Aviation Underwriters, Inc.,* 179 F.Supp. 616 (W.D.Va.1959); *Aviation Charters, Inc. v. Avemco Insurance Co.,* 335 N.J.Super. 591, 763 A.2d 312 (2000).

7. In 1972, one commentator referred to a causation requirement as the "modern trend." J. Appleman, 6A *Insurance and Practice* § 4146 (1972). However, even the *Puckett* court, cited by Defendants in support of their position, noted that it was "debatable" whether it is in fact the modern trend. In reality, it has seldom been followed in the last thirty years. Moreover, it is worth noting that reliance on Appleman is questionable for a different reason, the discussion in Appleman regards breach of policy provisions generally, and not in the context of aviation.

jected the majority view and found that a causal connection between the accident and loss is required.

In particular, the Defendants suggest that *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984), and *Bayers v. Omni Aviation Managers Inc.,* 510 F.Supp. 1204 (D.Mont.1981), are applicable here. *Bayers* and *Puckett* represent the minority position.

*Bayers,* a 2003 decision by the Montana Supreme Court, involved an airplane crash in which the pilot did not have a valid medical certificate as required by the terms of his insurance policy. The court in *Bayers* concluded that because there was no causal connection between the accident and the pilot's lack of a valid medical certificate, the insurer could not avoid coverage. *Bayers* concluded that causality is a key element of the insurer's burden to avoid coverage on the notion that, as a matter of public policy, denial of coverage to the insured based on a "technicality" would be unfair. *Bayers,* 510 F.Supp. at 1207.

■ In Nevada, a contract exclusion may be invalid if it violates public policy. *McDaniel v. Sierra Health,* 118 Nev. Advance Opinion 62 (2003). The exclusion in this case does not violate public policy. Other states have reached similar conclusions. The Arizona Supreme Court provided its rationale for finding that causality was not required as follows: "We also believe, as do a majority of the courts that have considered this question, that public policy favors a rule that encourages owners and operators of aircraft to obey and satisfy safety regulations applicable to their operation of aircraft." *Security Insurance Co. Of Hartford v. Andersen,* 158

Ariz. 426, 763 P.2d 246, 249 (1988). As noted by the Arizona Supreme Court, a majority of courts have found that public policy favors a rule that encourages annual inspections. These courts recognize that the clear purpose behind exclusions, like the one in this case, is to encourage the safe operation of aircraft. Such exclusions do not violate public policy.

Enforcement of the exclusionary clause in the instant case does not constitute a forfeiture because of a minor technical breach of a policy provision as Defendant Jensen argues it would. The exclusionary clause involved in this case relates to aircraft and public safety. Enforcement of such a provision serves to encourage compliance with the Federal Aviation Regulations, which serve an important safety function. The Court finds that there is a strong public policy consideration that warrants the Court enforcing the contract and finding that *Bayers* does not apply.

Another case relied on heavily by the Defendants is *Puckett.* The court in that case, relying in part on a Texas anti-technicality statute applicable to fire insurance policies,[8] found that the public policy of Texas was violated by the exclusionary clause that allowed an insurance company to avoid liability on the basis of a breach of condition in an aviation policy. Unlike the Texas statute in *Puckett,* however, Nevada, does not have an anti-technicality statute that would apply to this case or that could be said to be representative of this state's public policy.

Although not briefed by the parties, the Defendants argued to the Court at the June 5, 2003 hearing, that Nevada Revised Statute 687B.110 of the Insurance Code is

---

8. The Texas statute states that "[n]o breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, upon personal property, shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property." Tex. Ins. Code Ann. art. 6.14.

an anti-technicality statute and should apply to this case. The Defendants have not, however, provided the Court with any valid supporting authority for their argument. The Court's independent research did not uncover any cases that support the position that section 687B.110 would apply here. Additionally, a simple reading of this statute suggests that there is no application to this case. N.R.S. 687B.110 relates to representations made in an application for an insurance policy or annuity contract. In the instant action, there have been no claims that Kevin Jensen made any misrepresentations in his application.

Furthermore, even if he had made a misrepresentation, it would not alter the outcome of this Court's analysis, because the statute simply does not apply to the facts of this case. In sum, for the Court to find that N.R.S. 687B.110 applies to this case would be to find an anti-technicality statute where one clearly does not exist.[9] Furthermore, this statute does not indicate the public policy of Nevada.

Other cases relied on by the Defendants involve policies which do not contain specific exclusionary clauses or are inapplicable for other reasons. For example, *Carrington Estate Planning Service, v. Reliance Standard Life Ins. Co.*, cited by Defendants for the proposition that the Ninth Circuit is following the "modern trend," has no applicability to the instant action. No reasonable reading of *Carrington* would suggest the Ninth Circuit is following the *so called* modern trend or that *Carrington* would even apply to aviation cases.

## V. OTHER CONSIDERATIONS

Regarding Defendants' argument that additional discovery is needed to determine if there is a material issue of fact, the Court finds this without merit. Additionally, Defendants raised a number of issues at the June 5, 2003 hearing, and in supplemental briefing since the hearing, which the Court finds meritless and untimely. A number of these issues are clearly put forth to create an issue of material fact. However, it is well settled that the non-moving party "may not build a case on the gossamer threads of whimsy, speculation, and conjecture." *Barmettler v. Reno Air. Inc.*, 114 Nev. 441, 445, 956 P.2d 1382 (1998); *Collins v. Union Fed. Savings & Loan*, 99 Nev. 284, 302, 662 P.2d 610, 621 (1983) (quoting *Hahn v. Sargent*, 523 F.2d 461, 469 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

## VI. CONCLUSION

Based on the plain and unambiguous language in the policy and the strong public policy reasons supporting the FAA annual requirements, combined with the overwhelming majority of authority finding that a causal connection need not exist between the lack of annual inspection and

---

9. That statute provides for representations made in insurance applications and states:

All statements and descriptions in any application for an insurance policy or annuity contract, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

1. Fraudulent; or

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

3. The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

a policy breach for coverage to be excluded, the Court finds that Old Republic has no liability under the policy it issued to Kevin Jensen. Plaintiff's Motion for Summary Judgment (# 15) is **GRANTED.**

**IT IS SO ORDERED.**