406 So.2d 678 (1981)
Nat LITTLE, Plaintiff-Appellee,
v.
KALO LABORATORIES, INC., et al., Defendants-Appellees,
Ivan O. Morris, Jr., Third Party Plaintiff and Appellant,
Southern Farm Bureau Casualty Insurance Company, Third Party Defendant and Appellee.
No. 14686.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1981.
Rehearing Denied December 10, 1981.
Rankin, Yeldell, Herring & Katz by Stephen J. Katz, Bastrop, for Ivan O. Morris, third party plaintiff-appellant.
Cotton, Bolton, Roberts & Hoychick by John Hoychick, Jr., Rayville, for Southern Farm Bureau Ins., third party defendant-appellee.
*679 Deutsch, Kerrigan & Stiles by Frederick R. Bott, New Orleans, for third party defendant Frank Day.
Before HALL, JASPER E. JONES and FRED W. JONES, JJ.
En Banc. Rehearing Denied December 10, 1981.
JASPER E. JONES, Judge.
This is an appeal by third party plaintiff, Ivan O. Morris, Jr., of a judgment granting his insurer, third party defendant, Southern Farm Bureau Casualty Insurance Company's motion for summary judgment dismissing it from this law suit on the grounds that an exclusion in its comprehensive liability policy precluded any coverage for the crop damages sought against its insured.
Mr. Morris is a successful farmer in Morehouse Parish where he has large and varied operations. One of these operations is the growing of rice. This case results from Morris' decision to apply a herbicide called "Defy" to his rice crop.
The primary active ingredient in "Defy" is a substance called 2-4-D which makes "Defy" extremely damaging to broad leaf plants but harmless to rice. "Defy" can be applied either by an aircraft or by a tractor powered ground spray rig.
Morris elected to have "Defy" aerially applied by Morris' Flying Service, Inc. "Defy" was mixed with water and an anti-drift agent and then sprayed on the rice by one of the Flying Service's planes. An anti-drift agent is a substance which causes the herbicide to fall more rapidly to the ground, thereby reducing the danger it will drift onto a non-target field. In a further effort to avoid inadvertent spread of the spray a buffer zone was left along the down wind edge of the rice field.
Despite these efforts the "Defy" somehow spread. It reached about 2,000 acres of cotton, which is highly susceptible to 2-4-D, and caused varying degrees of damage. Eventually, twenty-one different suits were filed in response to the damage. Those suits have been consolidated in this proceeding.
At this point a review of the pleadings is appropriate. The original petition names six defendants: Kalo Laboratories, Inc., the marketer of "Defy"; Transbas, Inc., the formulator of "Defy"; Nalco Chemical Company, the maker of the anti-drift agent; Morris Flying Service Inc.; First State Insurance Company, Kalo's liability insurer; and Underwriters at Lloyds of London, the Flying Service's insurer.
Among the asserted bases for liability were that the "Defy" volatilized after application to the rice field or granulated after application to the rice field, and was then "driven into petitioners' cotton crops by subsequent winds."
Kalo answered the petition and made third party demands against Transbas, the Home Insurance Company, the insurer of Transbas, Ivan Morris and Duke Shackelford, another farmer. Kalo asserted that Transbas, the formulator, was liable for any defects in "Defy." Kalo alleged Morris and Shackelford were liable as landowners and, alternatively, for not determining if the spraying could be conducted safely.
Morris answered the third party demand of Kalo and made his own third party demand. Included among the defendants in Morris' third party demand was his insurer Southern Farm Bureau Casualty Insurance Company. Morris alleged that he should be indemnified by his insurer for all amounts for which he should be held liable. Morris also adopted the allegations of the original petition.
Morris alleged that Southern Farm had issued to him a liability policy providing him coverage in this case. Morris demanded attorney's fees from Southern Farm for its failure to defend him.
The relevant portions of the Southern Farm policy read as follows:
"Coverage BProperty Damage Liability. To pay on behalf of the insured all sums except punitive damages, unless required to be included by law, which the insured shall become legally obligated to pay as damages because of (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at *680 any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period; ..."
The following provisions appear in the section of the policy headed "Exclusions":
"This policy does not apply:

. . . . .
(b) under Coverages A, B and C, to the ownership, maintenance, or use, including the loading or unloading of

. . . . .
(4) aircraft

. . . . .
(m) under Coverages A, B and C, to bodily injury, property damage or sickness, disease or death arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply to sudden and accidental discharge, dispersal, release or escape of chemicals nor to damage to farm crops and livestock arising out of the application of farm chemicals subject to the Chemical Deductible as provided under Condition 1, Limits of Liability, Coverage B."
The chemical deductible limits the insurer's liability to 95% of the damage in excess of $250.
Southern Farm made a motion for summary judgment on Morris' third party demand based on exclusion (b)(4) and the fact that the "Defy" had been applied by air. It attached to the motion for summary judgment only the policy which it had issued to Ivan Morris, and relied upon the pleadings and the policy to support the motion for summary judgment.
The district court rendered judgment in favor of Southern Farm dismissing the third party demands made against it by Ivan Morris.
Morris assigns as error that the trial judge granted Southern Farm's motion for summary judgment. We agree and reverse and remand.
Summary judgment should be granted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225 (La.1979); LSA-C.C.P. art. 966.[1] The burden is on the mover to show that no genuine issue of material fact exists and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Further, any doubt is resolved against granting summary judgment. Chaisson, supra.
The rules of construction of insurance policies must be considered here. The interpretation of the policy most favorable to the insured must be adopted. Creole Explorations, Inc. v. Underwriters at Lloyds, 245 La. 927, 161 So.2d 768 (1964). It is the duty of the insurer to clearly express exclusions or limitations in a liability policy. Corkern v. Main Insurance Company, Chicago, III., 268 So.2d 138 (La.App. 1st Cir. 1972); Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958). Exclusionary clauses are strictly construed. Commercial Union Ins. Co. of N. Y. v. Hardcastle, 188 So.2d 698 (La.App.2d Cir. 1966); Borden, Inc. v. Howard Trucking Co., Inc., 372 So.2d 242 (La. App. 1st Cir. 1979). The burden is on the *681 insurer to prove that an exclusion applies. Borden, Inc., supra.
The pleadings in this case assert liability against Morris on at least two different theories: strict liability under LSA-C.C. art. 667[2] and negligence.[3] At oral argument Southern Farm conceded there would be coverage in this case had the "Defy" been applied with a ground rig. In the absence of the exclusion there would clearly be coverage even though an airplane was used because the language of exclusion (m) which excludes chemical damages specifically excepted from the exclusion "damage to farm crops ... arising out of the application of farm chemicals..." This language shows that Coverage B was intended to cover damages like those in this case. Thus, the burden is squarely on Southern Farm to show that there is no genuine issue of material fact, that coverage was excluded by (b), (the use of aircraft exclusion), and that reasonable minds could not conclude otherwise. Borden, Inc., Chaisson, supra.
During oral argument Southern Farm contended that exclusion (b) did not require a causal connection between the use of the airplane and the damage for the exclusion to apply. Southern Farm and the trial judge both took the position that the damage need only follow the use of an airplane, it being their position that even though all the "Defy" was placed upon Morris' farm by the airplane with no drift to the plaintiff's cotton during the spraying operation, that the exclusion still applied to the damages that occurred when the "Defy" later arose from its resting place in the rice field and went into plaintiff's cotton field, because the "Defy" was initially placed in the rice field by the airplane. We find that conclusion to be contrary to the policy's language and the law.
In the coverage section of the policy the insurer agrees "to pay ... all sums ... which the insured shall become legally obligated to pay as damages because of (1) physical injury to or destruction of tangible property ..." The exclusions state that coverage does not apply to the use of aircraft. In order for the exclusion to apply the use of aircraft must in some way be responsible for the insured's becoming "legally obligated to pay damages." There must be a causal connection between the use of the airplane and the damage for the exclusion to apply. The exclusion does not apply merely because the damage follows the use of the airplane. The use of the airplane must have been a substantial factor in causing the damage. LeJeune v. Allstate Ins. Co., 365 So.2d 471 (La.1978). This concept is reflected in Southern Farm's brief where it states: "[t]he policy is clear and plain, that there is no coverage afforded for property damage caused through the use of aircraft." (emphasis added).
The weakness of the position that the damage is excluded if it follows the use of an aircraft is shown by examining its effect in other circumstances. If the "Defy" had been shipped by air to the Morris farm, there placed in storage and then escaped because of some corrosive effect on its container and caused this damage, under the interpretation of Southern Farm and the district judge, there would be no coverage because it would have followed the use of aircraft. If the "Defy" was brought to the farm by air and then placed upon the rice *682 by ground rig, there would be no coverage for subsequent "Defy" damage if the exclusion is construed in the manner urged by Southern Farm. If this interpretation of the exclusion were taken to its logical extreme the exclusion would swallow the coverage. To adopt the construction suggested by Southern Farm would violate the principle expressed in Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968), that an insurance contract should not be interpreted so as to lead to absurd conclusions.
In Fertitta, supra, the court observed that the insurance contract should be examined "as a whole ... to determine the contemplation of the parties negotiating the insurance contract."
Coverage B and exclusion (m) show that it was the intent of the parties to cover one class of risks, namely, those associated with farm chemicals. Exclusion (b) shows that it was intended that risks of aircraft be excluded. Included among the risks covered by the exclusion would be damages sustained by the aerial application of the chemical directly to the wrong farm, either by error or by spraying it over the target farm when wind conditions were such that the chemical would be blown to the nontarget farm before it came to rest upon the ground. Where the damage flows from the chemicals unrelated to the use of the aircraft the risk is one clearly intended to be covered as reflected by the language of exclusion (m) and the aircraft use exclusion is inapplicable. We hold there must be a causal relationship rather than a mere connection between the excluded risk and the damage complained of for that damage to be excluded from coverage.
Our holding is supported by the jurisprudence. In Kendrick, supra, there was a claim asserted against the installer of a sewer system for a fire loss which was caused by an explosion which occurred after the work had been completed. The installer's insurer denied liability on the basis of an exclusion of coverage for completed work. The court found that though the damage occurred after completion it was caused by negligence in construction and was therefore covered rather than excluded.
In Tillman v. Canal Insurance Co., 305 So.2d 602 (La.App. 1st Cir. 1974), a large amount of gravel fell from a truck onto a highway. A few hours later another motorist struck the gravel, lost control and hit a second vehicle killing its driver. The plaintiff attempted to recover from defendant's general liability insurer. The insurer argued that there was no coverage based on an exclusion of "... damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile..." The court refused to apply the exclusion finding that the negligence which caused the death was the failure to remove the gravel or warn of its presence.
LeJeune, supra involved a fatal collision between a hearse and another vehicle. The wreck occurred at the intersection of two highways. The funeral procession was on the highway on which traffic was to stop and yield before proceeding through the intersection. When the deputy sheriff leading the procession reached the intersection it was clear, so he continued on without securing the intersection with his car. As the hearse neared the intersection it was being approached by a car driven at a high rate of speed on the other highway. The driver of the hearse attempted to cross in front of the oncoming car and the collision resulted. There were found to be three causes of the accident: the negligence of the speeding driver, the negligence of the hearse driver and the negligence of the deputy in failing to secure the intersection. The sheriff's general liability insurer asserted that there was no coverage on the basis of an exclusion of injury arising out of the ownership, operation or use of an auto. The exclusion was found inapplicable because the negligence of the deputy was independent of, though concurring with, the use of an auto.
In Johns v. State Farm Fire & Cas. Co., 349 So.2d 481 (La.App. 3d Cir. 1977), the plaintiff was trying to remove a dead limb from a tree in the insured's yard. In order to do this a rope was thrown over another limb in the tree and one end attached to *683 plaintiff's waist. The other end was attached to a car. As plaintiff climbed the tree the car was to be driven away to keep the slack out of the safety rope. When plaintiff reached the proper height he let go of the tree in order to be able to remove the dead limb. When plaintiff released his grip the rope broke and he fell sustaining serious injury. Plaintiff sued the homeowner's insurer of the premise where the tree was located. The insurer asserted that there was no coverage of injury "... arising out of the ownership, maintenance, operation, use, loading or unloading of ... any motor vehicle ..." The court held that there must be not only a use of a vehicle but a connexity between the use of the vehicle and the accident for the exclusion to apply.
In order for Southern Farm to be entitled to the summary judgment it had the burden to show that there was no genuine issue as to the two material facts in this case. That is, that an airplane was used and the damage was caused by that use.
There is no dispute that the "Defy" was applied by air. However, there is a genuine issue as to the second fact. The pleadings include two ways that the "Defy" could have moved to the cotton which would not have been caused by the use of the airplane, volatilization and granulization.[4] The cause of the movement of the "Defy" cannot be determined from the present record and therefore it cannot be determined if the exclusion should be applied. The cause of the movement of the "Defy" is a material fact about which there remains a genuine issue.
The judgment of the district court is reversed and the appellee's motion for summary judgment is denied and this cause is remanded to the district court for further proceedings. All costs of this appeal are assessed against appellee.
REVERSED and REMANDED.
NOTES
[1] C.C.P. art. 966The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.

The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
[2] C.C. art. 667Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
[3] Paragraph 22 of Kalo's third party demand against Morris reads as follows: "Kalo further alleges upon information and belief that at the time the aerial applications were made as set forth in plaintiff's original petition, the spraying operations were conducted on parcels of land owned by Ivan Morris, Jr. and Duke Shackelford, both of whom are liable under the Civil Code of Louisiana for the spraying operations conducted upon their land or as a further alternative, for failing to determine that the spraying operations could be conducted in safety or alternatively for creating a situation with regard to their particular rice crop growing on said lands which caused or created the type of injury alleged upon in plaintiff's original petition."
[4] Volatilization appears to be a phenomena, caused by a combination of high temperature and humidity, in which the already applied chemical "vaporizes" and comes back up off the crop to which it was applied.

Granulization appears to be a condition where the chemical enters a crystaline type state and can be easily moved off the crop to which it was applied by winds.