JOHN DEERE INSURANCE
COMPANY, Respondent,

v.

Andrew PENNA, Brenda
Linder, Appellants,

Andreas Charles Penna, putative child
of Andrew Penna, and Brenda
Linder, et al., Defendants.

No. C8–87–1355.

Court of Appeals of Minnesota.

Dec. 15, 1987.

Lawrence M. Rocheford, Jardine, Logan & O'Brien, St. Paul, Thomas M. Countryman, for John Deere Ins. Co.

Seth R. Phillips, Newport, for Andrew Penna.

David P. Sullivan, Bye, Boyd, Andresen & Sullivan, Duluth, for Brenda Linder.

Heard, considered and decided by WOZNIAK, P.J. and FORSBERG and STONE *, JJ.

## OPINION

BRUCE C. STONE, Judge.

This is an appeal of a summary judgment determination that respondent insurer, John Deere Insurance Company, has no duty to defend or indemnify the insured, Andrew Penna, in a negligence action brought by Brenda Linder for injuries sustained in a sky-diving accident.

Appellants argue that the trial court misconstrued the exclusionary language of the policy and improperly granted summary judgment for respondent insurer.

From that judgment Andrew Penna and Brenda Linder appeal. We affirm.

## FACTS

Much of the fact situation is undisputed. On March 10, 1985, appellant, Brenda Linder, suffered severe physical injuries as the result of a parachuting jump supervised and controlled by appellant, Andrew Penna and defendant below, Robert Sarvela. As an inexperienced parachutist, Linder was required to be accompanied by two sky-diving jumpmasters. Penna and Sarvela jumped with Linder at a height of approximately 7,000 feet and commenced an accelerated free fall with the jumpmasters holding onto Linder. At approximately 4,000 feet, Penna released his hold on Linder. Shortly thereafter, her parachute opened and Sarvela released his hold. Penna and Sarvela landed first—Linder's parachute having more surface area allowing a slower, more gradual descent—and proceeded to direct her descent from the ground. She claims their instructions were confusing and that they were negligent in selecting a hazardous jump site.

Upon landing, Linder struck power lines and sustained severe and permanent injuries. Medical bills to date exceed $250,000. Linder commenced a civil action sounding in negligence against Andrew Penna, Rob-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

ert Sarvela and the St. Croix Valley Skydiving Club, Inc. in St. Louis County District Court. Respondent then initiated a declaratory judgment action in Washington County District Court naming both appellants; Andreas Charles Penna, the putative child of appellants; United States Parachute Association; St. Croix Valley Skydiving Club, Inc.; Jon Quist; Robby Murray, the pilot; Federal Aviation Administration; Unknown Landowner; Northern States Power Co.; Polk–Burnett Electric Co.; Osceola Airport and unnamed others.

Appellants agree that no material dispute exists as to the circumstances surrounding the accident, but argue instead with the court's construction of the exclusionary language in the policy:

Coverage E—Personal liability * * * do[es] not apply to bodily injury * * *

e. arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft

Appellants further contend that representations made at the time the policy was issued led Penna to believe that he had coverage for parachuting accidents.

The Washington County District Court granted respondent insurer's motion for summary judgment, finding no duty to defend or indemnify Penna and, therefore, no duty to reimburse Linder or any other party to this action. The court found that the injuries were a "natural and reasonable consequence of the use of an aircraft" and, thus, were excluded from coverage under the policy. The court did not reach the question of whether the parachute itself was an aircraft within the meaning of the policy.

## ISSUES

1. Whether the trial court erred in granting summary judgment to the insurer?

2. Whether the trial court properly held that a sky-diving accident arises from the use of an aircraft as a matter of law?

3. If not, whether a parachute is an aircraft within the meaning of the policy exclusion?

## ANALYSIS

### I.

Summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Minn. R.Civ.P. 56.03. Once such a motion has been made, the non-moving party "may not rest upon the mere averments or denials of [the] pleadings, but must present *specific facts* showing that there is a genuine issue for trial." Minn.R.Civ.Pro. 56.05. In the absence of such a response, the motion will be granted.

Respondent, John Deere, moved the trial court for a summary judgment on the question of its liability for torts allegedly committed by appellant Penna and whether or not it had the duty to defend him in that action.

■ The parties did not and do not dispute the basic circumstances surrounding the accident. Appellant Penna is concededly insured under a homeowner's policy issued by respondent, John Deere. Although specific questions of material fact may exist as to details concerning the accident, Linder's medical care, the amount of medical bills and so forth, these questions are not relevant to the issue of Perma's ultimate liability, nor are they relevant to the question of whether or not the homeowner's policy excludes coverage for sky-diving accidents. That issue is a combined question of law and fact. Whether or not the policy language should be construed to include sky-diving accidents is primarily a question of law. Whether appellant Penna detrimentally relied upon statements made by his insurance agent when he bought the policy, and whether he reasonably believed his parachuting activities would be covered by the policy are questions of fact.

However, it is incumbent upon the parties to vigorously preserve their right to a trial on the merits by opposing a motion for summary judgment with *specific* facts which would indicate such a motion should be denied. Appellants have failed to do so and cannot now prevail upon this court for

a reversal of that judgment by arguing that issues of material fact remain for decision.

Appellants made vague reference to the fact that conversations between appellant Penna and his insurance agent may have some bearing upon this case. Nothing specific is contained in appellants' opposition to the motion for summary judgment:

> [John Deere] in its brief and support affidavits goes into considerable detail regarding the discussions between agent and insured at the time of and prior to the issuance of the policy. To the extent that it is important that these discussions be known and that the facts be known regarding the understanding and intent of the parties and especially the insured regarding the extent of his insurance, the extent of the liability coverage and the nature of any exclusions and whether they were made known to him, it is important to consider the full evidence of those discussions, permit cross-examination of the agent and allow a trier of fact to determine the fact questions regarding the insured's understanding.

Respondent's brief and support affidavits include excerpts from depositions given by appellant Penna and his insurance agent, Robert Emery, regarding their conversations about the insurance policy. Appellant Penna's recollection of those conversations is poor:

> Q. Just so I've got it clear, the only reason you purchased the homeowner's policy was to get some insurance coverage just for the house?
>
> [Penna] A. That was the stipulation by the mortgage company.
>
> Q. Did you tell Mr. Emery when you purchased the homeowner's insurance that you were a skydiver or a parachuter?
>
> A. I don't recall that conversation two plus years ago.
>
> Q. When you purchased the homeowner's insurance did you ask for coverage for skydiving accidents?
>
> A. I don't recall.

These excerpts amount to a prima facie admission that appellant Penna neither believed nor desired that his policy contain sky-diving coverage. The sole piece of evidence supporting appellants' claim for liability coverage is the affidavit of appellant Linder's sister-in-law alleging that Penna told her he had coverage under his homeowner's policy. If appellant Penna wished to prove detrimental reliance, fraud in the inducement, mutual mistake or any other reason why the words of the policy exclusion should not be given effect, then he was required to provide the trial court with *specific* facts tending to prove those claims. By his failure to do so, the respondent, John Deere, was entitled to summary judgment as a matter of law.

## II.

In the interpretation of insurance contracts, this court will generally enforce the contract according to its terms where they are clear and unambiguous. *Merseth v. State Farm Fire and Casualty Co.*, 390 N.W.2d 16, 18 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. Aug. 13, 1986). The contract will be strictly construed against the insurer as drafter where the terms at issue are indefinite or ambiguous. *Chase v. General Accident Fire & Life Assurance Corp.*, 225 Minn. 363, 30 N.W.2d 633 (1948).

Whether a sport parachuting accident falls within an exclusion denying coverage for accidents arising out of the use of an aircraft is a question of first impression in this state. Other states, however, have dealt extensively with related questions.

These cases are necessarily fact specific but general trends are nonetheless discernible. Most courts universally agree that death caused by the crash of an airplane clearly arises from the use of the aircraft. *Safeco Insurance Co. v. Husker Aviation, Inc.*, 211 Neb. 21, 317 N.W.2d 745 (1982). But not all uses of an airplane have been found to be causally related to the loss sustained. In *Little v. Kalo Laboratories, Inc.*, 406 So.2d 678 (La.Ct.App.1981) *cert. denied*, 410 So.2d 1133 (La.1982), *aff'd after remand*, 424 So.2d 1065 (La.App.1983),

cert. denied, 430 So.2d 79 (La.1983), an insured farmer sought recovery under his policy for damages to his neighbor's crops caused by the insured's use of an airplane for crop dusting. The trial court had granted summary judgment for the insurer. The appellate court reversed and remanded saying that the excluded risk must be causally related to the damage which occurred, not merely a preceding factor. Id. 406 So.2d at 682.

Automobile exclusion clauses have been interpreted in a similar manner. In a classic case, an automobile exclusion was held not to apply to injuries caused by a gun with a hair-trigger mechanism which discharged and injured a passenger when the automobile in which the insured, the passenger and the gun were riding was jarred by driving over uneven ground. State Farm Mutual Auto Insurance Co. v. Partridge, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973).

Other courts have distinguished between voluntary vs. emergency parachuting/crash landings. A Wisconsin court found coverage under home owner's policies despite aircraft exclusions when an emergency landing, executed without injury, preceded the insured's death from a heart attack, as he was dragging himself to safety in a snowstorm. Eschweiler v. General Accident Fire and Life Assurance Corp., 241 F.2d 101 (7th Cir.1957).

However, a large number of jurisdictions have held that crash landings or emergency ejections successfully completed but nevertheless resulting in death (drowning, hypothermia) are caused by the inherent risk of flight and therefore are not covered. See Elliott v. Massachusetts Mutual Life Insurance Co., 388 F.2d 362 (5th Cir.1968). An Iowa court has held that where death occurs outside an aircraft after an emergency exit, the accident is considered to have been caused or to have occurred inside the aircraft for insurance purposes. Richardson v. Iowa State Traveling Men's Association, 228 Iowa 319, 291 N.W. 408 (1940). A Kansas court has held that an individual participates in aviation from the moment he becomes airborne until he touches the ground again. Smith v. Mutual Benefit Health and Accident Association, 175 Kan. 68, 258 P.2d 993 (1953).

It does not appear as though other jurisdictions have dealt with the question of whether sport parachuting mishaps arise out of the use of an aircraft. Almost without exception, foreign courts have focused instead upon whether or not a parachute is itself an aircraft. These jurisdictions are split in their analysis. Compare Edison v. Reliable Life Insurance Co., 664 F.2d 1130 (9th Cir.1981) (device for aerial navigation) and Stajnrajh v. Continental Casualty Co., 41 Pa.D & C 2d 411 (1966) (degree of control indicates the parachute is a "device for aerial navigation") with Childress v. Continental Casualty Co., 461 F.Supp. 704, aff'd, 587 F.2d 809 (5th Cir.1978) (parachute is a device used to retard the speed of descent, not a device of aerial navigation) and Clark v. Lone Star Life Insurance Co., 347 S.W.2d 290 (Tex.Civ.App. 1961) (not a device of aerial navigation). As the question in these cases—whether a parachute is an aircraft—was dispositive it appears as though these courts rejected the idea that the use of the airplane itself was sufficient to trigger the exclusionary language. Or as one court explained in defining the phrase "descending from:"

> [I]t includes, we think, such things as making a voluntary descent by parachute not because the plane is about to crash, or as descending from the plane after it has landed, things separated in causal connection from the "riding in."

Willingham v. Life and Casualty Insurance Co. of Tennessee, 216 F.2d 226, 228 (1954). The language here indicates both the insurer's and the court's recognition of separate and distinct activities: use of the aircraft for transportation, and exiting of the aircraft/termination of use.

We elect to follow the analysis of Elliot, Richardson and Smith in holding that the act of parachuting is so intimately associated with the use of the airplane as to be inseparable from it. Indeed, appellant Linder could not have jumped nor could she have injured herself without the active assistance of the airplane. Her use of the

airplane commenced at the time she boarded it, and while her exit terminated her use of the aircraft, her accident arose directly from that use.

Moreover, respondent insurer explicitly excluded the very type of injury at issue here. Through the language of its exclusionary clause, it is abundantly apparent the company had no intention of insuring this type of activity. It elected to impose a blanket exclusion of any and all activities directly or indirectly related to the use of an aircraft.

The *American Heritage Dictionary*, 1982 defines "arise" as "[t]o come into being; originate * * * to result, issue or proceed. Used with *from*." This accident most certainly "originated, resulted and proceeded" from the use of an aircraft.

Finally, neither party could reasonably have anticipated this type of accident would be covered under a *homeowner's* insurance policy. Absent proof of discussions or agreement to the contrary between the insurance agent and the insured, we can find no reasonable expectation of coverage.

Were the issue to arise in a policy covering "liability for bodily injury arising out of the use of an aircraft" we would have no hesitation in holding (without an exclusionary clause) there to be coverage when a parachute jumper was injured. With the exclusionary clause, we cannot logically reach the same result.

### III.

As we find appellant Linder's accident falls within the policy exclusion, it is not necessary to determine whether a parachute is itself an aircraft.

### DECISION

Affirmed.