KHIRY COSEY ON BEHALF     \*     NO. 2019-CA-0757
OF HER MINOR CHILDREN,
CORBIN HILLIARD AND     \*
ALLYSSA HILLIARD
INDIVIDUALLY AND ON     \*     COURT OF APPEAL
BEHALF OF THE ESTATE OF     FOURTH CIRCUIT
REGINALD HILLIARD, JR;     \*
TIARA LIGGINS ON BEHALF     STATE OF LOUISIANA
OF HER MINOR CHILD,     \* \* \* \* \* \* \*
TAKHIREE HILLIARD
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
REGINALD HILLIARD, JR.;
TUKEYA JARVIS
INDIVIDUALLY AND ON
BEHALF OF THOMAS
HILLIARD; AND DOROTHY
JARVIS

VERSUS

FLIGHT ACADEMY OF NEW
ORLEANS, LLC; JAZZ
AVIATION, LLC; QBE
INSURANCE CORPORATION;
CHRISTIANSEN AVIATION,
INC.; ABC INSURANCE
COMPANY; SIGNATURE
FLIGHT SUPPORT
CORPORATION; ALLIANZ
GLOBAL CORPORATE &
SPECIALTY SE; THE ESTATE
OF JAMES BIONDO; AND DEF
INSURANCE COMPANY

CONSOLIDATED WITH:          CONSOLIDATED WITH:

KHIRY COSEY ON BEHALF OF      NO. 2019-CA-0786
HER MINOR CHILDREN,
CORBIN HILLIARD AND
ALLYSSA HILLIARD
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
REGINALD HILLIARD, JR;
TIARA LIGGINS ON BEHALF OF
HER MINOR CHILD, TAKHIREE
HILLIARD INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF

**REGINALD HILLIARD, JR.;**
**TUKEYA JARVIS INDIVIDUALLY**
**AND ON BEHALF OF THOMAS**
**HILLIARD; AND DOROTHY**
**JARVIS**

**VERSUS**

**FLIGHT ACADEMY OF NEW**
**ORLEANS, LLC; JAZZ**
**AVIATION, LLC; QBE**
**INSURANCE CORPORATION;**
**CHRISTIANSEN AVIATION, INC.;**
**ABC INSURANCE COMPANY;**
**SIGNATURE FLIGHT SUPPORT**
**CORPORATION; ALLIANZ**
**GLOBAL CORPORATE &**
**SPECIALTY SE; THE ESTATE OF**
**JAMES BIONDO; AND DEF**
**INSURANCE COMPANY**

| **CONSOLIDATED WITH:** | **CONSOLIDATED WITH:** |
|---|---|
| **KHIRY COSEY ON BEHALF OF HER MINOR CHILDREN, CORBIN HILLIARD AND ALLYSSA HILLIARD INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF REGINALD HILLIARD, JR; TIARA LIGGINS ON BEHALF OF HER MINOR CHILD, TAKHIREE HILLIARD INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF REGINALD HILLIARD, JR.; TUKEYA JARVIS INDIVIDUALLY AND ON BEHALF OF THOMAS HILLIARD; AND DOROTHY JARVIS** | **NO. 2019-CA-0878** |

**VERSUS**

**FLIGHT ACADEMY OF NEW**
**ORLEANS, LLC; JAZZ**
**AVIATION, LLC; QBE**
**INSURANCE CORPORATION;**
**CHRISTIANSEN AVIATION, INC.;**
**ABC INSURANCE COMPANY;**

**SIGNATURE FLIGHT SUPPORT CORPORATION; ALLIANZ GLOBAL CORPORATE & SPECIALTY SE; THE ESTATE OF JAMES BIONDO; AND DEF INSURANCE COMPANY**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-09317  C\W 2016-11198, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

***BELSOME, J., CONCURS IN THE RESULT***

John D. Sileo
Casey W. Moll
LAW OFFICE OF JOHN D. SILEO, LLC
320 North Carrolton Avenue, Suite 101
New Orleans, LA 70119

Eric J. Allen (Admitted Pro Hac Vice)
ZEHL & ASSOCIATES, PC
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056

Roderick "Rico" Alvendia
Jeanne K. Demarest
Kurt A. Offner
ALVENDIA, KELLY & DEMAREST, L.L.C.
909 Poydras Street, Suite 1625
New Orleans, LA 70112-4500

Cleo Fields
THE FIELDS LAW FIRM, LLC
2147 Government St.
Baton Rouge, LA 70806

Ike Spears
SPEARS & SPEARS
909 Poydras Street, Suite 1825
New Orleans, LA 70112

COUNSEL FOR PLAINTIFFS/APPELLANTS

Darrell K. Cherry
Stephen D. Collins
DEUTSCH KERRIGAN, LLP
755 Magazine Street
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLANT

Robert I. Siegel
Leo R. McAloon, III
GIEGER LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800
New Orleans, LA 70139

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**MAY 13, 2020**

In this insurance coverage dispute, multiple parties appeal the April 23, 2019 district court judgment, which granted partial summary judgment in favor of defendant/appellee, QBE Insurance Corporation ("QBE"), finding no coverage under QBE aviation commercial general liability policy number QAV0000847 (the "CGL policy") and dismissing all claims against QBE under its CGL policy.[1] For the reasons that follow, we affirm.

This litigation arises out of an airplane crash during an aerial tour over New Orleans departing from the Lakefront Airport. Briana Davis ("Davis") and her boyfriend, Reginald Hilliard, Jr. ("Hilliard"), were the passengers, and the pilot was James Biondo ("Biondo"). When the airplane crashed into Lake Pontchartrain, Hilliard and Biondo drowned, while Davis escaped and survived. Davis and numerous members of Hilliard's family (the "Hilliard plaintiffs") filed lawsuits,

---

[1] As discussed in this opinion, the judgment found coverage under a separate aircraft policy, also issued by QBE, and QBE remains a defendant in this litigation with respect to damages allegedly covered under the aircraft policy.

and these lawsuits were consolidated. The defendants named in these consolidated lawsuits, which are pertinent to this appeal, include:

- Estate of James Biondo ("Biondo's estate");

- Flight Academy of New Orleans, LLC ("FANO") as operator of the aerial tour, lessee of the airplane, and Biondo's alleged employer or principal;

- Jazz Aviation, LLC ("Jazz"), which is a separate company[2] operating out of the same office as FANO and having the same members as FANO; and

- QBE as insurer for FANO and Jazz.

QBE issued a CGL policy to FANO and Jazz containing the following relevant provisions:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies resulting from your **aviation operations**….
b.    This insurance applies to **bodily injury** and **property damage** only if:
(1)    The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**:
…

**2. Exclusions**
This Insurance does not apply to:
…
**g. Aircraft, Auto, Or Watercraft**
**Bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of an **aircraft**, **auto**, or **watercraft** owned or operated by or rented or loaned to any insured. Use includes operation and **loading** or **unloading** and with respect to **aircraft**, operated by also includes operation on behalf of any insured.

---

[2] The record reflects that FANO's primary business is flight training and aerial tours, while Jazz's primary business is charter flights.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to other of any **aircraft**, **auto**, or **watercraft** that is owned or operated by or rented or loaned to any insured….

…

**SECTION V – DEFINITIONS**
3. **Aircraft** means any aircraft including engines, propellers, operating, and navigating instruments and radio equipment attached to or usually attached to or carried on the aircraft. Including component parts detached, and tools therein which are standard tor the make and type of aircraft. The term aircraft excludes missiles, spacecraft and launch vehicles.

…

5. **Aviation operations** means all operations arising from the ownership, maintenance, or use of locations for aviation activities, including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities.

…

7. **Coverage territory** means;
a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;
b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; …

18. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions….

(Emphasis in original).

Davis, the Hilliard plaintiffs, and QBE each filed motions for partial summary judgment regarding coverage under the CGL policy. Davis and the Hilliard plaintiffs argued that the CGL policy provides coverage for their claims. Conversely, QBE contended that the CGL policy's "aircraft, auto, or watercraft" exclusion (the "aircraft exclusion") precludes such coverage. QBE conceded, however, that it issued a separate aircraft policy to FANO, policy number QAV0000846 (the "aircraft policy"), which provides coverage for the accident.

Biondo's estate opposed QBE's motion, but filed no separate summary judgment motion. Following a hearing on April 12, 2019, the district court rendered judgment on April 23, 2019, denying Davis' and the Hilliard plaintiffs' motions and granting QBE's motion. Davis, the Hilliard plaintiffs, and Biondo's estate timely appealed the judgment.[3]

An appellate court's "review of a grant or denial of a motion for summary judgment is *de novo*." *Jones v. Estate of Santiago*, 03-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006 (citation omitted). Summary judgment procedure is favored in Louisiana. La. C.C.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"A dispute as to whether, as a matter of law, an insurance policy provides or precludes coverage to a party usually involves a legal question which can be resolved in the framework of a motion for summary judgment." *Batiste v. City of New Orleans*, 11-1168, p. 3 (La. App. 4 Cir. 2/29/12), 85 So.3d 800, 802 (citations omitted). "Although the insured bears the burden of proving a policy of insurance affords coverage for an incident, the insurer bears the burden of proving the

---

[3] On appeal, Davis, the Hilliard plaintiffs, and Biondo's estate all raise similar assignments of error: that the district court erred in (1) granting QBE's motion for partial summary judgment and (2) denying Davis' and the Hilliard plaintiffs' motions for partial summary judgment. Their various arguments differ somewhat, however. In this opinion, we identify arguments raised by Davis, the Hillard plaintiffs, and Biondo's estate as being argued by "all appellants." We identify arguments by Davis and the Hilliard plaintiffs only (but not joined by Biondo's estate) as being argued by "the plaintiffs."

applicability of an exclusionary clause within a policy." *Jones*, 03-1424, p. 12, 870

So.2d at 1010 (citation omitted). "Summary judgment declaring a lack of coverage

under an insurance policy may not be rendered unless there is no reasonable

interpretation of the policy, when applied to the undisputed material facts shown

by the evidence supporting the motion, under which coverage could be afforded."

*Reynolds v. Select Properties, Ltd.*, 93-1480, p. 2 (La. 4/11/94), 634 So.2d 1180,

1183 (citing *Westerfield v. LaFleur*, 493 So.2d 600, 605 (La. 1986)).

In *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, pp. 7-9 (La. 5/22/07),

956 So.2d 583, 588-90, the Louisiana Supreme Court summarized the principles of

insurance policy interpretation as follows:

> … an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code.
>
> According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. … In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning.
>
> An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.
>
> When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when

the policy's provisions are couched in unambiguous terms. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent.

Nevertheless, if, after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. This strict construction principle applies, however, only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

(Internal citations omitted).

With respect to exclusionary provisions within the insurance policy, the Supreme Court further explained that "unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds." *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 06-1827, p. 6 (La. 5/22/07), 958 So.2d 634, 638-39 (citations omitted). "In these circumstances, unambiguous provisions limiting liability must be given effect." *Id.*, 06-1827, p. 6, 958 So.2d 634, 639. "If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written." *Id.*, 06-1827, p. 6, 958 So.2d 634, 638.

In the matter *sub judice*, QBE sought summary judgment declaring that the aircraft exclusion in its CGL policy precludes coverage for this accident. As set forth above, the exclusion reads:

**2. Exclusions**
This Insurance does not apply to:

6

...
**g. Aircraft, Auto, Or Watercraft**
**Bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of an **aircraft**, **auto**, or **watercraft** owned or operated by or rented or loaned to any insured. Use includes operation and **loading** or **unloading** and with respect to **aircraft**, operated by also includes operation on behalf of any insured.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to other of any **aircraft**, **auto**, or **watercraft** that is owned or operated by or rented or loaned to any insured….

(Emphasis in original).

This Court interpreted a virtually identical "aircraft, auto or watercraft" exclusion in a CGL policy, in a motor vehicle accident claim, and found this exclusion "unambiguous." *Vise v. Olivier House Prop. Mgmt., LLC*, 16-0741, p. 7 (La. App. 4 Cir. 4/12/17), 216 So.3d 157, 162; *see also Howell v. Ferry Transp., Inc.*, 04-2057, p. 5 (La. App. 4 Cir. 3/29/06), 929 So.2d 226, 229 (finding an exclusion, which contained the same language as the first paragraph of the "aircraft" exclusion herein, unambiguous). There are no reported Louisiana cases, however, interpreting this exclusion in aircraft crash litigation.[4]

---

[4] The only reported Louisiana decision specifically addressing a policy exclusion for "use" of an "aircraft" involved a farm CGL policy containing substantially different language from the QBE CGL policy. In *Little v. Kalo Labs., Inc.*, 406 So.2d 678 (La. App. 2d Cir. 1981), the Second Circuit considered whether the exclusion applied to damage to a neighboring property from chemicals sprayed on the insured property via aircraft. The court found a genuine issue of material fact as to whether the chemical damage was caused by "use" of the aircraft, specifically, whether the chemicals reached the neighboring property through the aircraft spraying the wrong property or by chemicals drifting from the insured property. The Second Circuit took the view that chemical drift from the insured property was too attenuated from "use" of the aircraft. Under these facts, *Little* provides us with very limited guidance for resolving the issues on appeal.

7

QBE contends that the CGL policy covers premises liability at FANO's office at the Lakefront Airport but provides no coverage for the aircraft that FANO operates. Conversely, all appellants claim that the policy language covering "aviation operations" should be construed to include flying an aircraft. According to all appellants, certain coverage provisions are ambiguous and contradict the aircraft exclusion. All appellants, thus, contend that such ambiguity should be construed against QBE, thereby affording coverage for Davis' and the Hilliard plaintiffs' claims. Their argument points to the "definitions" section within the "Insuring Agreement" in "Coverage A" of the policy, containing the definitions for "aviation operations" and "coverage territory." The policy definition for "aviation operations" refers to "aviation activities," which is not defined in the policy.[5] The policy also defines the "coverage territory" to include the U.S. and international waters and airspace where damage occurs in the course of travel or transportation. All appellants argue that the "coverage territory" definition renders the policy ambiguous; they claim that there would be no need for coverage territory aside from FANO's offices at Lakefront Airport if the policy did not intend to cover bodily injury resulting from the use or operation of an aircraft. We note that the language "aviation operations," "aviation activities," and "coverage territory" do not appear in the "aircraft exclusion."

---

[5] As reflected above, the insuring agreement states, in relevant part, that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** or **property damage** to which this insurance applies resulting from your **aviation operations**…." Aviation operations are defined as "all operations arising from the ownership, maintenance, or use of locations for aviation activities, including that portion of roads or other accesses that adjoin these locations. **Aviation operations** include all operations necessary or incidental to aviation activities." (Emphasis in original).

8

In our view, appellants' arguments involve a narrow reading of the policy, which relies on isolated phrases but fails to accord meaning to the entire insuring agreement. We find that accepting these arguments would contravene the well-settled principles of contract interpretation. Appellants' interpretation of the policy would give this Court no choice but to disregard certain provisions at the expense of others, which is prohibited. Rather, the Louisiana Supreme Court made clear that "[o]ne provision cannot not be construed separately at the expense of disregarding other provisions." *Sims*, 07-0054, p. 12, 956 So.2d at 592. This Court is required to construe the policy as a whole and interpret each provision in light of other provisions. *Id.*, 07-0054, p. 12, 956 So.2d at 591-92. "In determining whether a policy provides coverage, every provision of the policy must be read and interpreted." *Id.*, 07-0054, p. 12, 956 So.2d at 592. "Only then can a determination of coverage be made." *Id.* To determine coverage here, the broad insuring agreement must be read together with the exclusionary provisions.

Appellants do not identify any ambiguity in the aircraft exclusion and do not explain with any record evidence a reasonable interpretation of the exclusion that would render it inapplicable to Davis' and the Hilliard plaintiffs' claims. Rather, we adopt this Court's holdings in *Vise* and *Howell*, and, likewise, we find no ambiguity in the aircraft exclusion. Here, the CGL policy does not cover bodily injury resulting from use of an aircraft owned or operated by any insured. It is undisputed that the aircraft involved in this accident was being operated by an insured under the policy at the time of the accident. A reading of the CGL policy as

9

a whole establishes that it covers bodily injury and property damage resulting from the use of FANO's premises, including all such operations that are necessary and incidental to FANO's business of operating aircraft, but excludes coverage for accidents by FANO-operated aircraft. Under these facts, we do not find any reasonable interpretation of the CGL policy which renders the aircraft exclusion inapplicable or affords coverage for the accident. We thus reject appellants' arguments that the policy is ambiguous.[6]

Also, all appellants contend that the CGL policy terms and the aircraft exclusion contradict each other such that coverage is illusory. Appellants ask this Court to conclude that the CGL policy cannot exclude coverage for an accident arising from use of an aircraft, where the insured's business is flying airplanes. We find nothing in the record or the CGL policy that supports this argument. Rather, insurers are "entitled to limit their liability and to impose reasonable conditions or limitations upon the obligations they contractually assume," as long as there is no conflict with statute or public policy. *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, 07-0251, p. 7 (La. App. 4 Cir. 10/10/07), 969 So.2d 653, 659 (citations omitted). "In these circumstances, unambiguous provisions limiting liability must be given effect." *Id.*

---

[6] Because we do not find the policy ambiguous, we do not reach Biondo's estate's arguments regarding the reasonable expectations doctrine. *See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 764)(the reasonable expectations doctrine is used to resolve ambiguity in the policy).

We acknowledge that courts of this state have upheld exclusionary provisions under similar circumstances. In *Howell*, 04-2057, p. 9, 929 So.2d at 231, this Court affirmed summary judgment enforcing an auto exclusion in a transportation company's CGL policy for an accident involving its tractor-trailer. Similarly, in *Williams v. Galliano*, 601 So.2d 769, 770 (La. App. 1st Cir. 1992), the Second Circuit enforced an auto exclusion in a waste management contractor's CGL policy for an accident involving its garbage truck.

We further note aircraft accident litigation in other jurisdictions. In *Barba v. Allianz Glob. Risks US Ins. Co.*, *unpub*., 16-2673 (S.D.N.Y. 10/25/16), 2016 WL 6236324, a New York federal district court, applying Alaska law, rejected the argument that the aircraft exclusion eliminates most coverage under the policy for aviation operations. Specifically, the court held that the aircraft exclusion applies only to a subset of aviation activities that involves use of an aircraft, finding that the exclusion:

> … does not negate the Policy's coverage of claims arising not out of the use of an aircraft, but out of locations at which aviation operations occur. For example, as Allianz notes, the Policy covers—and the Owned Aircraft exclusion does not negate coverage—for personal injuries such as slips and falls at premises owned, maintained or used for the insured's aviation activities.

*Id.* at *8.

We find this reasoning persuasive, and we find no impermissible conflict within the policy as a whole.[7] Thus, we find no merit in the contention that the aircraft exclusion renders coverage illusory.

_____

[7] We are not persuaded by the argument that *Little, supra*, supports a finding of coverage or requires us to find that the exclusion impermissibly "swallows" all coverage. As discussed

Davis and the Hillard plaintiffs also argue that the district court applied an overly broad application of the aircraft exclusion. They contend that they raised additional negligence claims arising out of FANO's pre-flight conduct. They argue that FANO negligently failed to conduct pre-flight safety briefings for its passengers or implement a corporate policy requiring life preservers on flights, conduct which they argue represents a different theory of liability and is beyond the scope of the aircraft exclusion.

QBE argues, and we agree, that plaintiffs have not asserted any theory of liability that is independent from its use of the airplane. As discussed above, the second paragraph of the aircraft exclusion specifically provides:

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the **occurrence** which caused the **bodily injury** or **property damage** involved the ownership, maintenance, use or entrustment to other of any **aircraft**, **auto**, or **watercraft** that is owned or operated by or rented or loaned to any insured….

(Emphasis in original).

The aircraft exclusion explicitly addresses negligent training. Claims of failure to provide passengers with a pre-flight safety briefing fall squarely within this exclusion, and thus, are not covered by the CGL policy. In *Calvin v. Janbar Enterprises, Inc.*, 03-0382, p. 5 (La. App. 4 Cir. 9/24/03), 856 So.2d 88, 91, this Court considered a similar "auto" exclusion and held that:

> the use of the motor vehicle is an essential element to the plaintiff's theory of liability, that [defendant] negligently hired, supervised, and

---

above, the *Little* court found that genuine issues of material fact whether "use" of the aircraft caused plaintiffs' damage. No such factual dispute exists here.

retained [driver] despite knowledge of his frequent drug use. Without the motor vehicle, this accident, as tragic as it was, would not have occurred. Therefore, we find that the provisions of the [] policy exclude coverage …

*See also Howell*, 04-2057, p. 5, 929 So.2d at 229 (following *Calvin* and excluding coverage for negligent hiring and supervision of driver, stating that use of an auto was an essential element to the plaintiffs' theory of liability).[8]

We also consider aviation accident cases of other jurisdictions interpreting similar exclusionary provisions. In *Reliance Nat. Ins. Co. v. Estate of Tomlinson*, 171 F.3d 1033 (5th Cir. 1999), the U.S. Fifth Circuit made an *Erie* prediction as to Mississippi law, recognizing the majority rule that liability for negligent entrustment of an aircraft and negligent supervision are excluded from coverage by owned aircraft provisions when the alleged acts could not have resulted in injury but for use of the aircraft.

In *Ranger Ins. Co. v. Branning*, 984 F.Supp. 466, 468-69 (S.D. Miss. 1997) – a related case arising out of the *Tomlinson* accident – a Mississippi federal district court held that negligent operation of the aircraft fell clearly within the aircraft exclusion. The court also found that the exclusion applied to preclude coverage for the following other allegations: the pilot "negligently induced Rives

---

[8] We find that plaintiffs misplace their reliance on cases wherein each of the theories of negligence at issue was wholly independent from use of an automobile. *See LeJeune* v. *Allstate Ins. Co.,* 365 So.2d 471 (La. 1978)(negligent deputy traffic control at intersection); *Manuel* v. *Luckett,* 577 So.2d 203 (La. App. 1 Cir. 1991)(negligent deputy radio dispatch); *Sarp* v. *United States Fidelity & Guaranty Company,* 572 So.2d 158 (La. App. 1 Cir. 1991)(negligently serving alcohol to minor); *Trammel* v. *Liberty Mut. Fire Ins. Co.,* 01-0948 (La. App. 4 Cir. 2/13/02), 811 So.2d 78, *writ granted, judgment rev'd,* 02-0768 (La. 5/24/02), 816 So.2d 294 (negligent tree removal); *Tillman* v. *Canal Insurance Co.,* 305 So.2d 602 (La. App. 1st Cir. 1974), *disagreed with by Carter v. City Par. Gov't of E. Baton Rouge,* 423 So.2d 1080 (La. 1982)(negligent gravel spill left unattended on roadway); and *Frazier* v. *State Farm,* 347 So.2d 1275 (La. App. 1 Cir. 1977)(negligent supervision of minor).

and others to go flying with him on the night of the accident"; "Tomlinson Avionics failed to establish and enforce safety rules, regulations and policies to prevent and guard against 'events which might reasonably be expected to occur and cause injury'"; and Tomlinson Avionics failed to "provide an adequate security force to implement and enforce' its duties under Mississippi law."

Similarly, in *Barba v. Allianz Glob. Risks US Ins. Co.*, *unpub.*, 16-2673 (S.D.N.Y. 10/25/16), 2016 WL 6236324, the federal district court described the aircraft exclusion as "categorical," and found that negligent entrustment claims fell within the exclusion, thus precluding coverage for all claims against the owner and lessor of a helicopter that crashed.

We find these holdings persuasive and find no reason to deviate from their reasoning. Negligent training of "others" – here, passengers – is both addressed in the plain language of the aircraft exclusion and inextricably linked with use of the aircraft. Failure to require life preservers on the aircraft is also dependent on use of the aircraft. We find no merit in plaintiffs' arguments that their alternative theories of negligence fall outside of the aircraft exclusion.

In sum, we find that the aircraft exclusion applies and precludes coverage under the CGL policy for Davis' and the Hilliard plaintiffs' claims. The district court, thus, properly granted summary judgment in favor of QBE finding coverage under the aircraft policy and dismissing all claims against QBE under its CGL policy.

Accordingly, for the reasons discussed herein, we affirm the judgment of the district court.

**AFFIRMED**